**Henritta LOVETTE, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 15689.**

United States Court of Appeals
Fifth Circuit.

Feb. 23, 1956.

Ernest D. Jackson, Jacksonville, Fla., for appellant.

Joseph P. McNulty, Asst. U. S. Atty., Tampa, Fla., Edith House, Asst. U. S. Atty., Jacksonville, Fla., James L. Guilmartin, U. S. Atty., Miami, Fla., for appellee.

Before HUTCHESON, Chief Judge, and JONES and BROWN, Circuit Judges.

HUTCHESON, Chief Judge.

Convicted on a one count indictment charging possession of 16 gallons of distilled spirits without having affixed to the containers thereof revenue stamps as required by law, and sentenced to imprisonment for a period of nine months, defendant appealed, assigning for reversal three grounds of error. These, as the defendant summarizes them are: (1) the denial of defendant's motion to suppress, on the ground that defendant did not claim but denied any

interest in or claim to the premises searched and the liquor seized thereon, was a denial of due process; (2) the subsequent holding, that the evidence, including defendant's possession of the key to the searched premises, was sufficient to take the case to the jury on the issue of her guilt, was, in view of the refusal to suppress the evidence, a denial of the defendant's constitutional rights against illegal search and seizure in violation of the Fourth Amendment; (3) the denial of defendant's motion for a directed verdict at the conclusion of all the evidence, on the ground that the evidence was sufficient to take the case to the jury, was in disregard of the record made.

Pressing upon us that the complained of rulings have resulted in an unjust and illegal conviction, she insists that the judgment must be reversed with directions to sustain the motion to suppress and direct an acquittal. In support she urges upon us that she was unjustly presented with the dilemma of having to choose between claiming and not claiming an interest in the premises or the whiskey and forced to make a choice at the peril on the one hand, if she chose to claim premises and property, of having the motion to suppress denied and her claim taken as evidence of her guilt, and, on the other, if she denied an interest in them, of having the evidence, sought to be suppressed, received, and the evidence as a whole considered sufficient to authorize her conviction.

We agree that appellant was in an equivocal position requiring her to make a choice. We cannot, however, agree that her choice should have been dictated by any consideration but truth, that her predicament resulted other than

from her own contriving, or that there was anything immoral, illegal, unconstitutional, or otherwise exceptionable in the complained of rulings.

■ Of the first ruling, that defendant, having disclaimed interest in, or possession of, the premises searched and the property seized, could not be heard to invoke the personal privilege of the Fourth Amendment, it is sufficient to say that no point of law is more firmly settled than that the guarantee of the Fourth Amendment against unreasonable searches and seizures is personal and can be raised only by one who, at the least, claims ownership or possession of, or connection with the premises searched or the property seized. The cases so holding are legion. This circuit, in Schwartz v. U. S., 5 Cir., 294 F. 528; Goldberg v. U. S., 5 Cir., 297 F. 98; Tritico v. U. S., 5 Cir., 4 F.2d 664, and Cantrell v. U. S., 5 Cir., 15 F.2d 953, early held this to be the law, and the rules there laid down have never been departed from here, Cf. Newfield v. Ryan, 5 Cir., 91 F.2d 700, at page 705; Shurman v. U. S., 5 Cir., 219 F.2d 282, 288, or elsewhere. Representative cases from other circuits which may be cited are Connolly v. Medalie, 2 Cir., 58 F.2d 629; Grainger v. U. S., 4 Cir., 158 F.2d 236.

■ On her complaint against the second and third rulings, that the evidence was insufficient to take the case to the jury, appellant stands no better. Her contention in her brief, that her possession of the key which fitted the lock on the building where the moonshine whiskey was found was the only evidence to connect her with the whiskey, is completely without foundation. Certainly this was a strong circumstance, but there was much additional evidence.[1]

1. Taking the evidence in the light most favorable to the verdict, as we must, it shows that on Sept. 3, 1954, the defendant operated a confectionary store located at 1827 41st St. in Duval County, Florida, consisting of a one story block building with the name "Twin Oaks Place" on the window.

A search warrant authorizing a search of the place for moonshine whiskey was duly issued and was executed. When Investigator Smith entered the premises

Appellant's attacks upon her conviction are ill founded. The judgment is affirmed.

with the search warrant in his hand and announced his identity and official position, the appellant immediately ran to the kitchen part of the Twin Oaks premises and began pouring a white liquid out of a quart jar into a dishpan. He was able to retrieve about an ounce of the liquid in the quart jar, and found it to be moonshine whiskey, and he also retrieved some of the dishwater which smelled of moonshine whiskey. He questioned appellant about it and she admitted to him that it was moonshine whiskey and she had dumped it.

A clearly discernible path led from the back of the Twin Oaks Place to the building where the whiskey was found, with a wire fence completely surrounding said building, with no opening in same except a hole that was within one or two feet of the back step of the Twin Oaks Place; as to the finding of the key on the counter in the Twin Oaks Place, that fitted the padlock on the building in the rear where the moonshine whiskey was found, Investigator Smith testified that, when he asked appellant for the key, she stated: "I have no key. I have nothing to do with it"; and she moved away from the counter. Whereupon he picked up the key that he saw lying on the counter and found that the number

on the key corresponded to the number on the lock on the rear building.

Appellant, in her testimony, equivocated as to what she replied to Investigator Smith in answer to his question about the key. She first stated that she said, "That isn't my place back there." Later she testified that when Investigator Smith asked her if she had the key she answered No, "because I had promised to give the key to the person which was Clement". Later she stated, "He asked me did I have the key and I didn't say nothing."

Appellant attempted to explain her possession of the key by testifying that a man named Clem or Clement owned or possessed the premises in the rear of the Twin Oaks Place, where the illegal whiskey was found, and that she was holding the key to give to him. On cross-examination, however, she stated that she did not know Clement's full name, and she did not know what kind of work he did, that he went to and from the place by coming around the side of the Twin Oaks Place and going through the hole in the fence, that she did not know how long Clement had been on the premises, but she had seen him a number of times going around her place, Twin Oaks, and going through the hole in the fence.