**Berlis Lansing GLISSON, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 26112.**

United States Court of Appeals
Fifth Circuit.

Jan. 15, 1969.

Nicholas S. Hare, Montgomery, Ala., for appellant.

Ben Hardeman, U.S. Atty., Montgomery, Ala., Paul C. Summitt, Atty., Dept. of Justice, Crim.Div., Washington, D. C., for appellee.

Before WISDOM and GODBOLD, Circuit Judges, and HUGHES, District Judge.

HUGHES, District Judge:

A three-count indictment, returned on February 7, 1968 in the United States District Court for the Middle District of Alabama charged Berlis Lansing Glisson with knowingly transporting in interstate commerce vehicles in violation of 18 U.S.C. § 2312. The case was tried on April 25, 1968 at which time counts one and three were not submitted to the jury. The defendant was found guilty of count two and was sentenced to five years. That count involved a White Diesel Tractor which the evidence revealed had been stolen sometime between October 28 and November 1, 1966 from the White Motor Corporation lot in Atlanta, Georgia. Shortly thereafter Glisson, using the name of James Gass, and his wife began living in Cogwell's trailer park at Pratherville, Alabama; he was then operating a White tractor.

Sometime about March 1967 Glisson was jailed for beating his wife. Prior to that time he had moved to a nearby fish camp, but the truck had remained at the trailer park. For some unexplained reason while Glisson was in jail a Lieutenant Posey from the Department of Public Safety went to the trailer park and observed the exterior of the truck, but made no examination to obtain identification numbers.

The truck description was given to Agent Turner of the F.B.I. who, with investigator Wright of the Department of Public Safety, went to the truck park on March 19, 1967 and examined the truck. On this occasion the initials JLG were noticed on the door and inspection and fuel stickers observed. The front door was opened and the identification number on the inside of the left door was noted. They also looked for, but were unable to find, a confidential identification number secreted on the vehicle by the manufacturer. Manufacturers place confidential numbers in several hidden locations and they correspond with the more obvious identification number placed just inside the door on the driver's side of the vehicle.

The tractor was thereafter moved to the Alabama Highway Patrol office and again examined by Investigator Wright and Agent Turner. The latter testified that on that occasion it was found that the identification number of the timing gear had been removed.[1] A confidential

---

[1]. In looking for the confidential number some metal dies for stamping letters and numerals were found in wooden boxes in the tool compartment. These dies were introduced into evidence as those used to change certain identification numbers.

number was finally located by Turner on the side of the right frame rail and was completely covered by paint. Several applications of paint remover were applied to make the number legible. During all the time covered by these examinations Glisson was in jail and no search warrant for the truck had been obtained.

While the case was pending no motion was made by Glisson's attorney to suppress evidence concerning the search or its fruits. The contention of the government is that Glisson by failing to file a motion prior to trial lost the right to object during the trial. We disagree. Rule 41(e) Federal Rules of Criminal Procedure [2] while providing for a motion to suppress before trial states the trial court "in its discretion may entertain the motion at the trial * * *."

Glisson's attorney objected to the introduction of the fruits of the search when Investigator Wright, the first witness to testify about the search, testified. The trial judge, after a bench conference with the attorneys, overruled the objection on the ground that Glisson had no standing to raise the issue since he did not claim ownership of the property.[3] Ruling on the objection during the trial was within the discretion of the district judge and there was no error in failing to require a motion to suppress the evidence prior to the trial.[4] The statement of the judge reveals that he exercised his discretion in entertaining the motion during the trial and overruled it on the merits.

We next discuss the question of whether the trial judge was correct in ruling that Glisson had no standing to object to the search since he claimed no ownership in the truck. Standing to object is a much more difficult question and one in which there is not a unanimity of opinion.

The Supreme Court in Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L. Ed.2d 697 (1960), has spoken on the question of the interest required in order to give the defendant standing to object. The defendant in Jones was in an apartment, not his own but one he was permitted to use, when the apartment was searched by federal officers having a search warrant. Jones was arrested and charged with a violation of the narcotics laws. He moved to suppress the evidence so seized, contending the search was illegal. The motion to suppress was denied on the basis of defendant's lack of standing.

Rule 41(e) provides that "a person aggrieved" may make such a motion. In *Jones* the Supreme Court stated:

> In order to qualify as a "person aggrieved by an unlawful search and seizure" one must have been a victim of a search or seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at some one else. *Id.* at 261, 80 S.Ct. at 731.

In discussing the situation as it related to the defendant the Court said:

> Petitioner's conviction flows from his possession of the narcotics at the time

---

2. Rule 41(e) F.R.Cr.Proc. provides in part: "Motion * * * to Suppress Evidence. A person aggrieved by an unlawful search and seizure may move the district court * * * to suppress for the use as evidence anything so obtained on the ground that (1) the property was illegally seized without warrant * * *. The motion shall be made before trial or hearing unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion, but the court in its discretion may entertain the motion at the trial or hearing."

3. No issue was raised at the trial of whether the defendant had abandoned the vehicle, and no issue of abandonment is raised by the government on this appeal.

4. Gilbert v. United States, 9th Cir. 1962, 307 F.2d 322; United States v. DiRe, 2d Cir. 1947, 159 F.2d 818.

of the search. Yet the fruits of that search, upon which the conviction depends, were admitted into evidence on the ground that petitioner did not have possession of the narcotics at that time. The prosecution here thus subjected the defendant to the penalties meted out to one in lawless possession while refusing him the remedies designed for one in that situation. It is not consonant with the amenities, to put it mildly, of the administration of criminal justice to sanction such squarely contradictory assertions of power by the Government. The possession on the basis of which petitioner is to be and was convicted suffices to give him standing under any fair and rational conception of the requirements of Rule 41(e). *Id.* at 263–264, 80 S.Ct. at 732.

Several Circuit Courts have discussed standing to object to a search in Dyer Act cases. In Simpson v. United States, 10th Cir. 1965, 346 F.2d 291, the defendant was in possession of a stolen car. The Court in holding that he had standing said at page 294:

> The government also contends that appellant has no standing to object to the search of the automobile since he has no right of ownership in it. Such a construction of the Fourth Amendment would totally negate the effect of the Weeks-McNabb exclusionary rule in regard to automobiles. Federal officers could search cars at will and, of all defendants prosecuted for automobile theft, only those who actually owned the automobiles could raise 4th amendment objections successfully. Moreover, the proof of ownership would be sufficient to quash the prosecution for theft of the automobile. * * *. The sole prerequisite to a defendant's raising the 4th amendment

issue is that he claim a proprietary or possessery interest in the searched or seized property.

Further on the motion for rehearing at page 295 the court declared:

> Simpson was in possession of a stolen car. Possession was the basis of the prosecution in Jones and possession is the basis for the conviction in the instant case, * * *. As we interpret Jones, the very nature of this prosecution accorded to Simpson the standing to invoke Rule 41(e) as a person aggrieved.

In Cotton v. United States, 9th Cir. 1967, 371 F.2d 385 in a similar Dyer Act violation the court held on possessory grounds that the defendant had standing and said:

> The question here is as to the standing of the thief who had possession of [the car] and claimed it as his own to object to a search of the car. We hold that he had such standing. To that extent we are in agreement with the decision of the Tenth Circuit in Simpson v. United States * * *. *Id.* at 391.

The government cites United States v. Graham, 6th Cir. 1968, 391 F.2d 439, as authority for its contention that Glisson had no standing to object to the search in this case. But *Graham* is inapposite. The car in *Graham* was in the possession of a co-defendant and the defendants who objected to the search were miles away from the situs and claimed no interest in the vehicle.

This Court has held in cases not involving violations of the Dyer Act that one not having possession or claiming the right to possession had no standing to object to a search of the premises.[5]

---

5. It was so held in *Parr v. United States*, 5th Cir. 1958, 255 F.2d 86, which involved the search of a cabin. While the defendant owned the structure the court pointed out: " * * * it had been leased and he did not have possession or the right to possession at the time of the search. Under such circumstances he had no right to complain of a search of the premises. * * *. And where one without possession or a right of possession disclaims any interest in the articles seized he cannot complain of the unlawfulness of the seizure."

But it should be pointed out that frequently in Dyer Act cases "possession is the basis for the conviction" as it was in *Jones.*

■ In the instant case the government convinced the jury that the defendant had possession of the truck shortly after it was stolen. This was necessary since there was no direct evidence of the actual transportation of the car across state lines. On appeal the government contends that although the evidence was sufficient to establish possession when the truck was recently stolen, the defendant lacked standing to object to the search. Although *Jones* dealt with a conviction for possession of narcotics the language is apposite here: "[t]he possession on the basis of which petitioner is to be and was convicted [should suffice] to give him standing under any fair and rational conception of the requirements of Rule 41(e)." To rule otherwise puts the defendant to an unconscionable choice and would allow the government the benefit of contradictory positions.

Holding as we do that Glisson had standing to move to suppress the fruits of the search we then come to the question of whether the search was illegal.

It should be noted that there were two distinct searches. The first took place when Agent Turner and Investigator Wright went to the truck park, looked at the outside of the truck and opened the left front door finding an identification number on the inside thereof. The second search was Turner's and Wright's more exhaustive examination which was made after the truck had been moved to the office of the Alabama Highway Patrol. During that search the officers found that the identification number on the timing gear had been removed. They also discovered some metal dies in the tool compartment and finally located a confidential number under several layers of paint on the side of the right frame rail.

■ It is clear that the search at the Alabama Highway Patrol Office was unreasonable and illegal.

Whether the visual examinations by the officers at the truck park can be considered a search depends in large part on the circumstances surrounding the observations.

■ In a recent Supreme Court case, Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968), the door of a car, which had been impounded as evidence of a robbery, was opened and the officer saw in plain view the automobile registration card belonging to the victim of the robbery. The defendant objected to the introduction of this card in evidence. The Supreme Court held that the registration card was not discovered by means of an illegal search and declared in part: "objects falling in the plain view of an officer who has a right to be in the position to have the view are subject to seizure and may be introduced in evidence."

In Cotton v. United States, *supra,* an officer opened the door of an impounded car, belonging to a man who had just been placed under arrest, for the purpose of checking the identification number on the door post. The Court held that such action for the purpose of making a record was not a search, "but if it was, the circumstances under which it was done makes that search an entirely reasonable one."

In United States v. Graham, 6th Cir. 1968, 391 F.2d 439, three cars in the possession of one of the co-defendants charged with a Dyer Act violation were taken to the police station and shortly thereafter a police sergeant opened the doors and recorded the serial numbers affixed to the doors. The defendants contended this examination constituted an illegal search. The Court held that the examination was not unreasonable and said in this regard:

Where police obtain an article for safekeeping from a suspect taken into

custody pursuant to a lawful arrest, we find no authority which requires them to get a search warrant before examining the article for the purpose of finding a serial number by which the article might be accurately identified.. *Id.* at 442.

While this Circuit has not passed directly on the question here involved there is dicta in Weaver v. United States, 5th Cir. 1967, 374 F.2d 878, that a visual observation by an F.B.I. agent of a car identification number was mere routine checking and not a search. This Court in *Weaver* specifically refused to rule on the search point since the police had an independent source for the evidence used.

From a reading of these cases it would appear to us that the circumstances of the instant case must be considered to determine whether this visual examination constituted an unreasonable search.

In this case the truck was parked at a truck park while the defendant was in jail on an unrelated offense. Opening the door to obtain the identification number was not incident to the arrest of defendant; there was no emergency requiring the identification number to be obtained immediately; there does not appear to have been any danger that the evidence would be removed or destroyed nor does it appear that the identification number was required for police bookkeeping records. Under the circumstances existing in this case the searches both at the truck park and the Alabama Highway Patrol Office do not measure up to the Fourth Amendment's test for reasonableness. Both situations demanded valid search warrants and it was plain error to permit the fruits of these searches to be introduced in evidence.[6]

The remaining contentions of defendant are without merit; for the reasons stated we REVERSE and REMAND for a new trial.

---

6. Barnett v. United States, 5th Cir. 1967, 384 F.2d 848.