**Albert Lee WILLIAMS, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 26142.**

United States Court of Appeals
Fifth Circuit.

May 29, 1969.

Paul Shimek, Jr., Pensacola, Fla. (Court appointed), for appellant.

Clinton Ashmore, U. S. Atty., Stewart J. Carrouth, Asst. U. S. Atty., Tallahassee, Fla., for appellee.

Before THORNBERRY and DYER, Circuit Judges, and KEADY, District Judge.

THORNBERRY, Circuit Judge:

Albert Lee Williams, defendant-appellant herein, was convicted by a jury under a four-count Dyer Act indictment (18 U.S.C. §§ 2312 and 2314) which charged him with unlawful transportation in interstate commerce of a stolen motor vehicle; unlawful transportation in interstate commerce of a forged Travelers Express money order in the amount of $100, knowing the same to have been forged; unlawful transportation in interstate commerce of another forged money order in the amount of $110, knowing the same to have been forged; and unlawful transportation in interstate commerce of a tool to be used in forging a security, namely a Travelers Express check writer, knowing the same to have been stolen. The principal issue presented on appeal is whether a warrantless search of the stolen automobile by Florida police officers violated appellant's fourth-amendment rights. The district court denied a motion to suppress incriminating evidence recovered by the search. Our interpretation of the cases in this difficult area compels us to reverse.

To summarize the facts in the light most favorable to the Government: July 12, 1967, a 1967 Ford was stolen in Tuscaloosa, Alabama. July 20, a grocery store in Birmingham was burglarized and among the things stolen were a number of money order blanks and two Travelers Express check writing machines. August 2, appellant arrived in Pensacola, Florida in a 1967 Ford and registered at a Holiday Inn. Subsequently, two forged money orders, the two that were alleged in the indictment, were cashed for him by local establishments. When a porter attempted to cash a third money order for appellant at the front desk of the motel, he was told that the money order was no good. He promptly notified local police. The officers went to the motel, questioned the porter, found appellant in a parking lot, and arrested him for vagrancy. Appellant later pled guilty to vagrancy.

While he was being taken to the county jail, one of the officers learned from the porter that the suspect had been driving a 1967 Ford with an Alabama license plate. On the evening of August 4, before booking appellant on a charge of vagrancy and putting him in a cell, the officer questioned him about the car. According to the officer, appellant stated he did not own the automobile and had no knowledge of it. A check with Alabama officials revealed that the Alabama license number was registered to a 1957 Buick. At this point, the officers declared the car to be abandoned, and had it towed to the jail parking lot, impounded, and searched. In the trunk, they found blank money orders, two check writing machines, one of which was alleged in the indictment, and a revolver. It did not occur to the officer in charge that he should get a warrant. Appellant later asserted a possessory interest in the automobile and urged that

the evidence obtained in the search and the fruits thereof be suppressed.

At the outset, we reject the Government's suggestion that we need not consider the validity of the automobile search because the fruits of the search relate to only one of the four counts while concurrent sentences of equal length were assessed for each of the four. Because of the concurrent sentences of equal length, it is argued that we can affirm the conviction on the basis of the three counts to which the search does not relate. We are clear, however, that the search relates to each of the counts so that the conviction would have to be reversed if the search were held invalid. The serial number obtained in the course of the search helped officers identify the stolen car and nail down the first count. The blank money orders found in the trunk tended to show that the stolen car was used to transport in interstate commerce the money orders that were cashed in Pensacola and alleged in the second and third counts. Finally, as the Government concedes, one of the check writers found in the trunk was the subject of the fourth count.

█ Also, we must reject the reason given by the district court and advanced by the Government in this Court for upholding the search. The trial judge ruled and the Government argues here that Lovette v. United States, 5th Cir. 1956, 230 F.2d 263 precludes appellant from asserting a fourth-amendment right against unlawful search of the stolen automobile. In *Lovette*, the defendant denied the illegal possession of whiskey with which she was charged and also denied any claim to or possession of certain premises wherein federal officers found the whiskey. As she had denied any ownership or possessory interest, the Court held the defendant to be without standing to assert a fourth-amendment right against unlawful search of the premises. Parr v. United States, 5th Cir. 1958, 255 F.2d 86 is to the same effect. The Government contends that the case *sub judice* is con-

trolled by *Lovette* and *Parr* by virtue of Albert Williams' initial statement to the officer that he did not own a car and did not know anything about the 1967 Ford. Having made this statement, it is contended that he cannot be heard at a later time to assert a personal fourth-amendment right in the automobile. We have reached two conclusions with respect to the applicability of *Lovette* and *Parr*. First, it should be said that these cases announce a rule of no-standing for defendants who come into court and deny the possession of certain property with which they are charged but at the same time assert a fourth-amendment right against the unlawful search of that property. This rule of no-standing is not strictly applicable to the case at bar because appellant was strongly asserting a possessory interest in the automobile by the time he came into court. Second, and more importantly, so far as standing is concerned, *Lovette* and *Parr* are no longer viable. In Jones v. United States, 1960, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, a narcotics case, the defendant had been faced with the common dilemma of having to deny any interest in the searched premises but at the same time having to assert a fourth-amendment right against the unlawful search of those premises. The Court held that his standing to assert a constitutional right could not be foreclosed by the necessity of his having to deny the possession of property with which he was charged. In the words of the Court "[t]he possession on the basis of which petitioner is to be and was convicted suffices to give him standing under any fair and rational conception of the requirements of Rule 41(e)." 362 U.S. at 264, 80 S.Ct. at 732. In Glisson v. United States, 5th Cir. 1969, 406 F.2d 423, this Court applied the reasoning of *Jones* to a Dyer Act case in which the defendant denied possession of a certain truck but at the same time asserted a fourth-amendment right against the unlawful search of that truck. As applied to the Dyer Act case now before us, *Glisson* means that the very nature of

the prosecution against Albert Williams, *i.e.*, the fact that his possession of the stolen automobile was the basis for the prosecution, suffices to confer standing upon him to maintain the illegality of the search.[1]

In the interest of clarity, we repeat that the standing doctrine formulated in *Lovette* and *Parr* is no longer viable and that appellant has standing to assert a fourth-amendment right despite his initial disclaimer of any interest in the automobile. To rule that he has standing does not mean, however, that his initial disclaimer has no bearing on the reasonableness of the search. We put aside the obstacle of standing and proceed to the merits of the fourth-amendment question; at this stage, appellant's initial disclaimer is one of the factors to be considered.

With respect to the search, the critical facts are that officers made a warrantless examination of the automobile after it had been impounded at the county jail and after appellant had been put in jail on a charge of vagrancy. It is apparent that there was time to procure a warrant. Though Williams disclaimed any knowledge of the car prior to the search, the officers had been informed by motel personnel that he had been using it. Prior to impounding the car and making a search, the officers had checked the Alabama license number and received information which gave them probable cause to think the car was stolen. The declared reason for impounding it was that it had been abandoned. The declared reason for the search was that it was police policy to inventory all impounded cars. Having restated the facts, we must evaluate them in the

light of Preston v. United States, 1964, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777; Cooper v. California, 1967, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 and their progeny, which is to say that we must delve into a rather mysterious area of the law.

In *Preston*, the defendant was arrested on a charge of vagrancy while seated in his automobile. The vehicle was subsequently taken into police custody to remove it from the street and was searched shortly thereafter. In reversing a conviction for conspiracy to rob a bank, which was based on evidence secured in the course of the search, the Supreme Court held that where the warrantless search of an automobile is too remote in time or place to have been made incident to arrest, it fails to meet the test of reasonableness under the fourth amendment. In *Cooper*, the defendant was arrested on a narcotics charge and his automobile impounded. About a week later, police conducted a warrantless search of the automobile for narcotics. Though the search was concededly not incident to arrest, the Court upheld it since the police had lawful custody of the vehicle for a reason closely related to the arrest and since the search was closely related to the reason for the arrest and to the reason the vehicle was in custody.[2] In *Cooper* the Court distinguished *Preston* on the ground that in *Preston* there was no relationship between the arrest for vagrancy, the reason for seizing the vehicle, and the reason for searching it. The Government in that case had attempted without success to justify the search primarily on the ground that it was incident to a lawful arrest.

1. In at least three recent Dyer Act cases, courts have analyzed the standing problem in the same way we have. *See* United States v. Graham, 6th Cir. 1968, 391 F.2d 439; Cotton v. United States, 9th Cir. 1967, 371 F.2d 385; Simpson v. United States, 10th Cir. 1965, 346 F.2d 291.

2. In *Cooper*, it was argued that the vehicle was seized, held, and searched by

police pursuant to a California statute providing for the forfeiture of vehicles used to transport narcotics, but the Court did not justify the search on the basis of the state statute.

Mr. Justice Black authored both *Preston* and *Cooper* for the Court. The decision in *Preston* was unanimous while there were four dissenters in *Cooper* who argued that *Preston* was being overruled. *See* 386 U.S. at 62, 87 S.Ct. at 791.

■ *Preston* and *Cooper* are somewhat difficult of analysis because they represent two distinct approaches to the same kind of case. In *Preston*, the Court tacitly assumed, probably because of the way the case was argued, that the search would be unlawful if not incident to arrest. On the basis of the conclusion that "[o]nce an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest," 376 U.S. at 367, 84 S.Ct. at 883, the search was held unlawful. In *Cooper*, on the other hand, it could not even be argued that the search was incident to a valid arrest, but rather than confine its attention to that question, as it had done in *Preston*, the Court went on to consider the reasonableness of the search under all the circumstances. As we read the opinion, the Court held that any warrantless search is to be judged by its reasonableness under all the circumstances. In taking this approach, the Court adopted as its test a dictum

from United States v. Rabinowitz, 1950, 339 U.S. 56, 66, 70 S.Ct. 430, 435, 94 L. Ed. 653: "The relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable" (quoted in *Cooper* at 386 U.S. 62, 87 S.Ct. 791). Making it clear that this is what he meant to say in *Cooper*, Mr. Justice Black said in Berger v. New York, 1967, 388 U.S. 41, 83, 87 S.Ct. 1873, 1895, 18 L.Ed.2d 1040,

> We have just this Term held that a search and seizure without a warrant and even without authorization of state law, can nevertheless, under all the circumstances, be "reasonable" for Fourth Amendment purposes.

Thus, while respectable authority might suggest that a warrantless search of an automobile is *per se* unreasonable unless incident to a lawful arrest or unless it would be impracticable to secure a warrant and at the same time prevent the vehicle from being removed from the jurisdiction,[3] the most recent pronounce-

---

3. It is said in Stoner v. California, 1964, 376 U.S. 483, 486, 84 S.Ct. 889, 891, 11 L.Ed.2d 856 that "a search without a warrant can survive constitutional inhibition only upon a showing that the surrounding facts brought it within one of the exceptions to the rule that a search must rest upon a search warrant." Another way of saying the same thing is that the fourth-amendment establishes a preference for searches under a warrant. United States v. Ventresca, 1965, 380 U.S. 102, 106, 85 S.Ct. 741, 744, 13 L.Ed. 2d 684; Aguilar v. Texas, 1964, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723; Jones v. United States, 1960, 362 U.S. 257, 270, 80 S.Ct. 725, 735, 4 L.Ed.2d 697. This line of authority recognizes as common-law exceptions to the warrant requirement that a warrantless search incident to a lawful arrest is valid, Agnello v. United States, 1925, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145, and that a warrantless search of an automobile or other vehicle is valid where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought, Brinegar v. United States, 1949, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879; Carroll v. United States, 1925, 267 U.S. 132, 153, 45 S.Ct. 280, 285, 69

L.Ed. 543. Harris v. United States, 1968, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed. 2d 1067 recognizes that no warrant is required in the situation where evidence has come to the officers' attention by virtue of being in plain sight. It is perhaps more correct to say that in this situation there is no search.

The cases cited above might be construed to mean that a warrantless search of an automobile after the defendant and his automobile are both in custody is *per se* unreasonable because it does not fit within one of the exceptions to the warrant requirement. But these cases must be re-read in the light of *Cooper*, which says that any warrantless search can be valid for fourth-amendment purposes if it is reasonable under all the circumstances.

Certainly *Preston* can be read in the same way as *Stoner* and the other cases cited in this footnote, though in *Preston* the Court confined its attention to the question whether the search was incident to arrest without really considering whether it could be validated on any other basis. After *Cooper*, the Supreme Court had occasion in Dyke v. Taylor Implement Mfg. Co., 1968, 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538, to consider whether a particular automobile search was controlled by *Cooper* or *Preston*. In *Dyke*,

ment of the Supreme Court is that any warrantless search is to be tested by its reasonableness under all the circumstances. Since *Cooper,* this Court has expressly held the "reasonableness test" applicable to the warrantless search of an automobile under police control, Matthews v. United States, 5th Cir. 1969, 407 F.2d 1371 [March 3, 1969]; Williams v. United States, 5th Cir. 1967, 382 F.2d 48, as have other courts, Lockett v. United States, 9th Cir. 1968, 390 F.2d 168; Morris v. Boles, 4th Cir. 1967, 386 F.2d 395. In judging the validity of the search in the instant case, then, we must ask whether it was reasonable under the circumstances.

But *Preston* is still on the books and in fact, has served as authority for invalidating a search in at least one case decided by the Supreme Court since *Cooper. See* Dyke v. Taylor Implement Mfg. Co., 1968, 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538. Moreover, *Dyke* and *Cooper* indicate that the Court has taken what might be called a second look at *Preston.* That is, rather than take the position that the only question raised and decided in *Preston* was whether the search was incident to arrest, the Court now says that the search in *Preston* was unreasonable when viewed in the totality of the circumstances. This means that in evaluating the reasonableness of the search here we must consider *Preston* along with *Cooper* and if the factors that made the warrantless search in *Cooper* reasonable do not apply, then *Preston* controls. As previously stated, the search for narcotics in *Cooper* was adjudged reasonable under the circumstances because it was closely related to the reason the defendant was arrested (for narcotics violation), the reason his car had been impounded (for transporting narcotics), and the reason it was being retained.

*See* United States v. Trotta, 4th Cir. 1968, 401 F.2d 514, 515.

In *Preston,* the defendant was arrested for vagrancy because he had been sitting in a car parked in a business district for several of the nighttime hours and when questioned he admitted he had no job or money. He could not produce a title to the car. He was taken to jail and his car was taken along apparently for no reason other than to get it off the street. As an alternative to its unsuccessful argument that the subsequent search was incident to a lawful arrest, the Government argued that the search was justified because the police had probable cause to believe the car was stolen. The Court appeared to reject this alternative argument on the ground that the search was still not incident to arrest even if the police did have probable cause to believe the car was stolen. In *Cooper,* taking what we have called a second look at *Preston,* the Court said the fact the police had probable cause to believe the car was stolen did not make the search reasonable because Mr. Preston was arrested for vagrancy, not theft, and his car was impounded for no announced reason other than to get it off the street. The absence of any relationship between the reason for his arrest (vagrancy), the reason for taking his car into custody (to remove it from the street for Preston's convenience), and the hypothesized reason for the search (probable cause to believe the car was stolen) distinguish *Preston* from *Cooper* and made the warrantless search in *Preston* unreasonable. *See* 386 U.S. at 60–61, 87 S.Ct. at 790–791.

In the case at bar, the official reason for arrest was vagrancy, the reason for impounding the car was that it had been abandoned and was probably stolen, and the reason for the search was that the police had a policy of searching all im-

---

the defendants were arrested for reckless driving and their car was parked outside the jail and searched while they were being booked. After examining all the circumstances, the Court concluded that "[t]he reasons that made the warrantless search in *Cooper* reasonable thus do not

apply here." 391 U.S. at 221, 88 S.Ct. at 1475. *Preston* was deemed controlling. This case indicates that the Court now takes the position that *Preston* exemplifies an unreasonable search and *Cooper* a reasonable one.

pounded cars. As in *Preston,* there was no particular relationship between the reason for arrest, the reason for taking the car in custody, and the reason for the search. In fact, the reason given for the search—that the police searched all impounded cars—was so vague that it could not be specifically related to anything and could not justify any warrantless search. Considering all the circumstances, we are unable to draw an operative distinction between this case and *Preston.* Here the police had good reason to believe the car was stolen, but the same was assumed to be true in *Preston.* One factual distinction is that here Mr. Williams disclaimed any knowledge of the car, whereas in *Preston* the defendant claimed the car as his own. While this difference might seem important at first, we have concluded that Williams' disclaimer did not make the search reasonable in this case. His disclaimer together with the check on the license number did give the police good reason for saying that the vehicle was abandoned and probably stolen, and this conclusion might in turn have justified a limited search for evidence that would identify the true owner. The police, however, did not make the limited search for serial number or title that might have been justified but rather a general exploratory search into a locked trunk for the reason that their policy was to make a general search of all impounded cars. This policy of making a general search was not specifically related to the reason the car was impounded and, as we interpret the cases, will not pass muster.

█ Recent decisions by this Court confirm that for a warrantless search of an automobile under police control to be lawful it must be closely related to the reason for the arrest and the reason the car is in custody. In a case also styled Williams v. United States, 5th Cir. 1967, 382 F.2d 48, the defendant abandoned his car while being pursued by postal inspectors who suspected him of stealing Treasury checks from the mails. The car was impounded by Houston City Police because it had been abandoned and was later searched by postal inspectors for evidence of the theft. The Court said the car was impounded because it was abandoned *and possibly could have been lawfully searched by police for evidence of identification* but the general exploratory search by postal inspectors was unlawful because it was not incident to any arrest and was not related to the reason for impounding the car. The absence of a relationship between the reason for impounding the car and the reason for searching it was fatal in that case as it is here. In that case, as here, the defendant was not claiming the car at the time it was searched, but the Court nevertheless held the general search without a warrant to be unlawful. In Barnett v. United States, 5th Cir. 1967, 384 F.2d 848, the defendants' automobile was searched in a jail parking lot after they had been booked. They were arrested on a state charge— they had failed to pay for goods and services furnished in a Tennessee municipality—but the search was based on a suspicion communicated by federal officials that the car might contain evidence of federal counterfeiting. The police officer admitted he did not really know what he was looking for. The search was held unlawful and *Cooper* was distinguished on the ground that in *Cooper* there was a relationship between the reason for the arrest and the reason for the search. *See* dissent by Judge Gewin at 391 F.2d 931.

More recently in Glisson v. United States, 5th Cir. 1969, 406 F.2d 423, the defendant was charged in federal court with possession of a stolen diesel tractor that people at a trailer park had seen him using. Shortly after he was arrested by state officers for beating his wife, the federal officers for some reason never clearly explained, went to the trailer park and examined the identification number inside the left door of the tractor. Then they removed the tractor to the Alabama Highway Patrol office and made a thorough search. Both the search at the trailer park and the one at

the Highway Patrol office were held unreasonable and illegal. Whatever reason there may have been for impounding the vehicle and making a search, it was unrelated to the offense for which Glisson had been arrested. As in the case at bar, the defendant was not claiming the tractor when the search was made and, in fact, never claimed it.

In Matthews v. United States, 5th Cir. 1969, 407 F.2d 1371 [March 3, 1969], we upheld the warrantless search of an automobile under police control, but that case was much like *Cooper*: The defendants were arrested on suspicion of narcotics violations and their automobiles were searched for narcotics. The relationship between arrest and search necessary to justify a warrantless search under *Cooper* was present. While the "reasonableness test" announced by *Cooper* for warrantless searches may have sweeping overtones, the present state of the law is that the test can be satisfied only where the search was closely related to the reason the defendant was arrested and the reason the automobile was impounded. As in *Preston, Williams, Barnett,* and *Glisson,* the essential nexus between arrest, custody of the automobile, and search is missing in the case at bar. As we read the cases, neither the fact the police had probable cause to believe the car was stolen nor the fact that Williams disclaimed it can save the warrantless exploratory search undertaken by the police pursuant to their policy of searching all impounded vehicles. Accordingly, it is our conclusion that the evidence recovered by the search and the fruits thereof should not have been admitted.

Reversed and remanded.

DYER, Circuit Judge (specially concurring).

I reluctantly concur in the result because of our previous decision in Glisson v. United States, 5 Cir. 1969, 406 F.2d 423. In *Glisson* the court held that "frequently in Dyer Act cases 'possession is the basis for conviction' as it was in *Jones*." This simply is not so. *Jones* was that unusual type of case where possession would both convict and confer standing. Possession, standing alone, does not establish guilt under the Dyer Act. It merely raises an inference that the jury may consider in the light of surrounding circumstances. Orser v. United States, 5 Cir. 1966, 362 F.2d 580.

While I therefore do not agree with *Glisson* I accept it as a binding precedent.