**Sinclair JOHNSON, alias St. Clair Johnston, Appellant,**

v.

**Lamont SMITH, Warden, Georgia State Prison, Reidsville, Georgia, Appellee.**

**No. 27016.**

United States Court of Appeals
Fifth Circuit.

July 9, 1969.

Glenn Zell, Atlanta, Ga., for appellant.

Arthur K. Bolton, Atty. Gen., Mathew Robins, Asst. Atty. Gen., Atlanta, Ga., for appellee.

Before COLEMAN and SIMPSON, Circuit Judges, and MEHRTENS, District Judge.

MEHRTENS, District Judge:

Sinclair Johnson appeals from an order denying his petition for a writ of habeas corpus. We affirm.

In 1961, Johnson and a co-defendant, Lawrence Duncan, were indicted in the

United States District Court for bank robbery. The two were also indicted by the State of Georgia for burglary involving the same robbery and, in a second indictment, for breaking into and robbing a store.

Both defendants retained counsel. The attorneys filed in the federal court motions on behalf of Johnson and Duncan to suppress as evidence items taken from each at the time of their arrest and, on behalf of Duncan alone, evidence concerning the bank robbery (and, at least thirteen other robberies) which had been taken from his apartment after his arrest.

The Court denied Johnson's motion to suppress and granted Duncan's motion only as to the items seized from his apartment. Ruling was reserved on Duncan's prayer for return of the property because "The record did not sufficiently disclose, what, if any, of the property was owned or lawfully possessed by Duncan nor reveal what, if any, of such property was not otherwise subject to lawful detention."

It appeared that agents of the FBI, believing that a person, using the name of Polk, was really Duncan, rented and occupied an apartment nearby the one occupied by Polk to arrest him if he should be Duncan. At about 5:30 P.M. Johnson, wanting to see Duncan, ascertained his apartment number from Duncan's sister-in-law. Johnson then went to Duncan's apartment, finding no one there. Johnson entered the apartment and shortly thereafter was arrested by the watching agents. This was the first and only time Johnson was in Duncan's apartment and he had entered without Duncan's knowledge or permission. Three hours later when Duncan returned he was also arrested. A search was conducted and a vast amount of property, much of which was believed to be (and later identified as) stolen property, together with $11,563.01 in currency and coins, was seized.

The Court found that agents of the FBI prior to the arrests had cause to suspect and did suspect that Johnson and Duncan committed the bank robbery; that at the time of the arrests there were outstanding federal warrants for Johnson and Duncan and this was known to the agents; and that the arrests and searches of the persons and seizure of currency and papers were lawful but, that as to Duncan, the search of his apartment was an exploratory search. The seizure was termed a mass seizure and therefore found to be unlawful.

The order, signed July 28, 1961, was entered August 3, 1961. No similar motions to suppress were made in the State court and, on July 31, 1961, Johnson and his codefendant pled guilty to the two State indictments for burglary. The State apparently intended using some of the same evidence which had been suppressed in the federal case. The State, however, knew nothing of the federal motion to suppress, or, at least did not know the rulings on the motions. After the State convictions the federal indictment was dismissed.

Although Johnson was fully aware of the federal court's ruling in January or February, 1962, he waited until 1967 to institute habeas corpus proceedings in the State court, asserting, as he does here, that he had been coerced into pleading guilty, and being therefore deprived of his right to effective assistance of counsel in the State proceedings because his retained counsel had misrepresented to him that the federal motion to suppress had been denied, whereas it had really been granted, and since (in his opinion) the State had no other evidence against him that would have caused him to plead guilty. Being unsuccessful in the State courts, Johnson thereafter filed the present petition for a writ of habeas corpus in the United States District Court making the same claims.

After a full evidentiary hearing the District Court found that there was no evidence to support the charge of collu-

sion between state and federal officials; that Johnson's contentions that he was denied the right to jury trial and that his indictment, conviction and sentence were based upon illegally seized evidence were without merit. The Court also found that there was no denial by the State of Johnson's right to appeal or denial of his right to effective counsel but that he had retained counsel of his own choice.

At the hearing, Johnson and his co-defendant testified that their attorneys insisted on additional fees before proceeding with the State trials. Upon hearing that no fee would be forthcoming, the attorneys told them the federal motion to suppress had been denied and that the evidence would be used against them in the State trial; that if they did not plead guilty they would probably receive two twenty-year consecutive sentences and would later be tried on the federal charges, but if they pled guilty, the federal charges would probably be dropped. The decision was then made to plead guilty and Johnson was sentenced to twenty years for each burglary to run concurrently with each other and also with the three-year remainder of an Alabama sentence Johnson owed that State. Sustaining testimony was given by the co-defendant's brother and his wife and a third person.

In direct conflict, Johnson's attorney (the other attorney being deceased) testified that he was aware that the federal court had granted the motion and had so advised Johnson and his co-defendant; that certain items suppressed, such as household items, were delivered to Duncan and his wife the same day of the ruling; that he was aware of the recent decision in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), and wanted the defendants to plead not guilty in order to test the applicability of *Mapp* in the Georgia courts; that he believed that the State had evidence oth-

er than that suppressed; that Duncan and Johnson were primarily interested in working out a plea to run concurrently with prison time that they then had to serve; and that the defendants insisted on pleading guilty, saying it would be easier to escape from the state prison than the federal prison.

The District Court made no specific finding of fact on this issue but, "assuming the truth" of Johnson's petition, found that "in order for a wrong to be subject to redress under the Fourteenth Amendment it must result from state action or, at the very least, the state must have some way of knowing of its occurrence. Here this element is completely missing. Assuming without deciding the default or even the perfidy of retained counsel, his dereliction was in no wise chargeable to the State." The District Court denied relief, citing Burkett v. Mayo, 173 F.2d 574 (5 Cir.1949); Moore v. United States, 334 F.2d 25 (5 Cir.1964). See also: Howard v. Beto, 375 F.2d 441 (5 Cir.1967); King v. Wainwright, 368 F.2d 57 (5 Cir.1966).

If we believed that a determination of this issue would be necessary to decide the case, we would send it back to the lower court. Waters v. Beto, 392 F.2d 74 (5 Cir.1968); Texas v. Payton, 390 F.2d 261 (5 Cir.1968). Such an action is, however, not necessary.

■ Johnson's plea was not coerced nor was it entered involuntarily or unknowingly. He fully knew his Constitutional rights and whether, in fact, he was guilty. Although the State might not have been able to use the suppressed evidence against his co-defendant, it might have used it against Johnson. Johnson had no standing to complain of the search and seizure. It is well settled that if the premises of one co-defendant are searched illegally (with certain exceptions not applicable here), he alone may complain, the illegal search not being a violation of the rights of the other.[1] Consequently, if his attorney

1. Rule 41(e) Federal Rules of Criminal Procedure; Parr v. United States, 255 F.2d 86 (5 Cir. 1958); Lovette v. United States, 230 F.2d 263 (5 Cir. 1956). See

did tell him that the evidence could be used against him, such advice was correct. Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1959), does not improve Johnson's position. In *Jones,* the petitioner was in a friend's apartment who had given him the use of it and a key with which he had admitted himself. Johnson was not a guest or invitee, was not domiciled there nor was he rightfully there with Duncan's knowledge or consent. Neither was Johnson the one "against whom the search was directed." There is no evidence of his having permission or a key, yet it is inconceivable that Duncan would have left his apartment unlocked with almost $12,000 cash and other valuables in it. Likewise, Garza-Fuentes v. United States, 400 F.2d 219 (5 Cir.1968), does not apply here because in that case the co-defendants, unlike this case, had been invited into the motel room and were there legitimately. In habeas corpus cases, unfortunately, the actual guilt of the person pleading guilty is not relevant. Here, Johnson, apparently knowing he was guilty, asserts that his plea was involuntary because he was misled by his attorney as to the admissibility of certain evidence as to his guilt; that in 1962 he discovered from Duncan that part of the State's evidence might have been suppressed had he gone to a jury and that, therefore, he should now be let out of prison. Johnson was not the victim of overzealous prosecutors, of the law's complexity or of his own ignorance or bewilderment. There was no "state action" in Johnson's case and the alleged misrepresentation of his retained counsel (which actually was correct) concerned only the admissibility of evidence. Upon the facts and under the law, the District Court order denying him habeas corpus relief was correct.

Affirmed.

also: Garza-Fuentes v. United States, 400 F.2d 219 (5 Cir. 1968), applying the rule set out in Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d

697 (1959), and United States v. Coots, 196 F.Supp. 775 (D.C.Tenn.1961), distinguishing *Jones.*