UNITED STATES of America, Appellee,

v.

John H. COLLINS, Appellant.

No. 76–1231.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 13, 1976.

Decided Feb. 10, 1977.

Kermit E. Bye, Fargo, N. D., for appellant.

Harold O. Bullis, U. S. Atty., Fargo, N. D., for appellee.

Before MATTHES, Senior Circuit Judge, and STEPHENSON and WEBSTER, Circuit Judges.

MATTHES, Senior Circuit Judge.

This is another appeal where the guilt of the accused (defendant) was established by the overwhelming weight of the evidence. Defendant was found guilty by a jury on eleven counts of transporting stolen motor vehicles in interstate commerce in violation of 18 U.S.C. § 2312 [1] and eleven counts of selling or disposing of the vehicles in violation of 18 U.S.C. § 2313.[2] He was sentenced to serve a total of ten years. Post-trial motions for a new trial and for release on bail pending appeal were denied.

The primary issue presented here concerns the legality of a warrantless search of defendant's automobile made at a police garage after the automobile had been removed from a public parking lot. The district court filed a memorandum opinion and order denying appellant's motion to suppress the introduction into evidence of certain articles obtained in the search. *See United States v. Collins,* 407 F.Supp. 1096 (D.N.D.1976). We conclude that the warrantless search did not violate the fourth amendment and that such articles were properly admitted into evidence.

I

The sequence of events that occurred in connection with the contested search is particularly important to a resolution of the issues raised in this appeal.

In the fall of 1975 two farmers in Wells County, North Dakota, Harlan Rogelstad and Byron Nelson, notified the FBI that certain vehicles in their possession might be stolen. On November 4, 1975, FBI agents Aldridge, Hufford and Waldie examined seven vehicles located at the Nelson farm for their Public Vehicle Identification Numbers (PVIN's) and True Vehicle Identification Numbers (TVIN's). A check with the National Crime Information Center indicated that all seven vehicles had been reported stolen.

Nelson advised the agents that the vehicles had been obtained through defendant and that he had last seen defendant about one month previous when defendant, driving a 1975 white Buick Limited automobile, arrived in the area with a Champion Motor Home driven by an unidentified couple. The agents learned that while certain of the vehicles found at the Nelson farm had been delivered personally by defendant, some had been delivered by other individuals, either in Wells County, or at Bismarck. Nelson informed Agent Aldridge that defendant had called from the Omaha jail the last of October or first of November and requested that his car be picked up from the Bismarck airport. Agents Aldridge, Hufford and Waldie became aware, through contact with their Omaha office, that defendant was in custody in Omaha and that at the time of arrest on October 20 he had in his possession five altered motor vehicle titles which corresponded with altered PVIN's on five of the vehicles at the Nelson farm. Agent Aldridge then telephoned Special Agent Willis at Bismarck to have him check at the Bismarck airport for defendant's automobile. Agent Willis located the Buick at the airport and had it impounded by Bismarck police on the basis of a violation of city parking regulations.

On the next day, November 5, an eighth stolen vehicle was located at the Halvorsen farm. The three agents then drove to Bismarck to examine the impounded Buick at

---

1. Section 2312 provides: "Whoever transports in interstate or foreign commerce a motor vehicle or aircraft, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both."

2. Section 2313 provides as follows: "Whoever receives, conceals, stores, barters, sells, or disposes of any motor vehicle or aircraft, moving as, or which is a part of, or which constitutes interstate or foreign commerce, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both."

the police garage. Agent Hufford testified at the suppression hearing that their sole purpose was to identify the true owner of the vehicle. An expired temporary license plate with defendant's name and a Denver address was affixed to the rear. The car was opened with a coat hanger. A tool box in the back seat was opened and found to contain a small socket set. A check on the PVIN, which was affixed to the rear part of the driver's side door, revealed no record of the car being stolen. While Agent Hufford looked for the TVIN,[3] and Agent Waldie searched the glove compartment, someone mentioned that it might be a rental vehicle and that rental agencies frequently place an identifying decal on the inside lid of the trunk. Agent Aldridge then opened the trunk by depressing a button in the glove compartment and found no decal, but did notice in plain view a device known as a "slammer", which is frequently used to replace and pull locks from automobiles. About at that moment, Agent Hufford located the TVIN. A check with the National Crime Information Center indicated that the car had not been reported stolen. The agents concluded that they had discovered defendant's "work car" and decided not to proceed further without a warrant. A search warrant was obtained on the morning of November 6.[4] A full search of the trunk yielded incriminating evidence consisting primarily of various tools used in the theft or changing the identity of automobiles, including the "slammer" first viewed during the initial search; lock and ignition parts; Illinois, Alabama and Indiana license plates; Ohio title applications; personal property belonging to the true owner of the Lincoln found at the Nelson farm; a can of spray paint;[5] and a bill of sale for a Ford tractor, Model 900, in the name of one Roy E. Goodman. In the glove compartment there was a bill of sale for the Buick in defendant's name and, under the driver's seat, a partial set of socket wrenches. These articles were introduced into evidence.

## II

The critical question is whether the circumstances of the warrantless seizure which occurred when defendant's car was towed to the impoundment area, see *United States v. Brown*, 535 F.2d 424, 427 (8th Cir. 1976), and the subsequent search fall within one of the recognized exceptions to the fourth amendment, see *United States v. Heisman*, 503 F.2d 1284, 1287 (8th Cir. 1974). We stated in *United States v. Kelly*, 529 F.2d 1365, 1371 (8th Cir. 1976) that "[w]arrantless searches or seizures are per se unreasonable unless there are special circumstances which excuse compliance with the Fourth Amendment warrant requirement. *Coolidge v. New Hampshire*, 403 U.S. [443] 454–55, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971)."

There is no generalized automobile exception to the fourth amendment warrant requirement. *See, e. g., United States v. Valen*, 479 F.2d 467, 470 (3d Cir. 1973). Exceptions to the warrant requirement have been recognized in cases involving (1) exigent circumstances, see *Chambers v. Maroney*, 399 U.S. 42, 51, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *United States v. Kelly*, 547 F.2d 82 (8th Cir. 1977); (2) permanent police custody, see *Cooper v. California*, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967); and (3) inventory searches, see *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976).[6]

Here, the government relies heavily on the exigent circumstances exception to the

---

**3.** The agents knew from the outset that the TVIN would not be in the glove compartment, trunk, or passenger compartment.

**4.** No mention of the initial search was made in the affidavit accompanying the application for the search warrant.

**5.** The paint corresponded in condition and color to that on vehicle identification number

plates removed from the stolen Lincoln, Corvette, and Thunderbird automobiles.

**6.** There is no contention here that the warrantless search was a valid inventory search under the standards enunciated in *Opperman*.

**560**

warrant requirement. The government contends, in effect, that exigent circumstances would have justified a search of the Buick when it was discovered initially at the Bismarck airport and, applying the doctrine of *Chambers v. Maroney, supra,* 399 U.S. at 52, 90 S.Ct. 1975,[7] that the exigency and probable cause factors still obtained later at the police impoundment area when government agents first entered the vehicle.

Defendant does not seriously argue that the facts and circumstances known to government agents on November 4 were insufficient to warrant the belief that the Buick constituted evidence of a crime. On the basis of their investigation in Wells County and conversation with Byron Nelson, the agents knew that defendant had been seen driving a white Buick Limited with a temporary license tag in the area and that he had participated in transactions culminating in the delivery of numerous stolen vehicles. We think that these facts gave government agents probable cause to believe that defendant's car was stolen. We turn, then, to the question whether exigent circumstances would have justified a warrantless search at the airport parking lot.

After defendant's arrest in Omaha on October 20, 1975, the incentive for the car's removal substantially increased. There was evidence, and defendant concedes, that he had telephoned Nelson from the Omaha jail in an effort to have his car removed from the airport parking lot only a few days prior to its seizure on November 4, *cf. Cardwell v. Lewis,* 417 U.S. 583, 595, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974) (plurality opinion). Moreover, the prior investigation disclosed the existence of confederates, two of whom had accompanied defendant when he was last seen in the area driving the car in question. *Cf. United States v. Kelly,* 547

F.2d 82 (8th Cir. 1977). Based on this information the agents had reason to believe that the vehicle was going to be removed from the airport parking lot. Defendant's contention that any exigency had passed by the time his car was searched at the police impoundment area is foreclosed by *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970) and *Cardwell v. Lewis, supra.* *Chambers* and *Cardwell* recognize that the existence of exigent circumstances is to be determined as of the time of seizure rather than as of the time of search.

Defendant, *citing Williams v. United States,* 412 F.2d 729 (5th Cir. 1969) as authority, claims, however, that this case does not fall within the rationale of *Chambers* because the purpose of the search was not closely related to the reason the automobile was in custody. As mentioned previously, the official reason for the initial seizure which was accomplished by Bismarck police upon Agent Willis' request, was violation of city parking ordinances. In *Williams,* the defendant, who was arrested on a vagrancy charge, disclaimed knowledge of the automobile in question, a 1967 Ford tagged with an Alabama license plate registered to a 1967 Buick. A general exploratory search conducted after a forced entry of the trunk yielded evidence relating to the interstate transportation of a stolen motor vehicle and forged money orders. The Fifth Circuit held that the evidence should have been suppressed because the reasons for impounding and searching the vehicle were unrelated to the charges for which the defendant had been arrested.

The line of authority represented by *Williams* is of questionable application here. *Williams*[8] rests upon the maxim that a search and seizure incident to an arrest is reasonable only if the arrest is lawful and if the search is incident to the arrest in pur-

7. Here, as in *Chambers,* the search that produced the incriminating evidence cannot be justified as a search incident to a valid arrest.

8. On the issue of inventory searches, *Williams* has been sub silentio overruled by later fifth

circuit cases, *see United States v. Kelehar,* 470 F.2d 176 (5th Cir. 1972) and its continued authority questionable under *South Dakota v. Opperman, supra.*

pose, time, scope, and place. *See Preston v. United States,* 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964). In the instant case, however, the warrantless search was justifiable on grounds wholly independent of defendant's arrest.

### III

Defendant also argues that the failure of the government agents to state in the affidavit accompanying the application for the search warrant that they had already entered the vehicle was an independent ground for suppression of the evidence.

█ The rule adopted by this circuit is that evidence should not be suppressed because of erroneous information in an affidavit unless the government agent was either recklessly or intentionally untruthful. Even in the case of a reckless misrepresentation, the evidence should not be suppressed if the misrepresentation was immaterial to the establishment of probable cause. In the case of deliberate government perjury, however, the court need not inquire as to the materiality of the perjury. *See United States v. Marihart,* 492 F.2d 897, 899–900 (8th Cir. 1974).

█ Government agents testified at the suppression hearing that failure to set forth in the affidavit the prior entry of the vehicle was mere inadvertence caused by the press of time. Having examined the affidavit in question together with the testimony adduced at the suppression hearing, we are not persuaded, on this record, that the omission rose to the level of "deliberate government perjury". *Id.* at 899. We are satisfied, moreover, that the omission, even if reckless, was not material to the establishment of probable cause.

### IV

█ Finally,[9] defendant contends that the district court erroneously denied his motion for a new trial. Viewing the evidence in the light most favorable to the convic-

tion, there is substantial evidence in the record to support the jury's verdict. *See Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942). The district court did not abuse its discretion in denying the motion for a new trial.

The judgment is affirmed.

---

9. Defendant also renews his motion for release on bail pending appeal filed initially on March 29, 1976 and denied by this Court on April 15, 1976. The circumstances have not changed in the interim such as would warrant defendant's release, and his motion is again denied.