## FERMAN WAYNE WRIGHT, Appellant, *v*. THE STATE OF NEVADA, Respondent.

No. 6482

August 1, 1972            499 P.2d 1216

*Robert G. Legakes,* Public Defender, Clark County, for Appellant.

*Robert List,* Attorney General, Carson City; *Roy A. Woofter,* District Attorney, and *Charles L. Garner,* Chief Deputy for Appeals, Clark County, for Respondent.

## OPINION

By the Court, GUNDERSON, J.:

Convicted of committing burglary by entering the Henderson Bowling Alley with intent to commit larceny, appellant contends officers who originally arrested him for displaying stolen license plates on his car, in violation of NRS 482.545, infringed his Fourth Amendment rights by warrantless "searches" of

his person and vehicle that produced evidence linking appellant to the burglary. This contention has no merit, in the factual context of this case.

About 2:00 a.m. on April 17, 1970, two Las Vegas patrol car officers, through a routine check with central control, learned the 1964 Oldsmobile ahead of them bore stolen Texas license plates. As the Oldsmobile turned into a motel parking lot, the officers pulled in "[a]pproximately ten to fifteen feet behind it." The Oldsmobile's driver, George Watts, got out and walked toward the motel office. Officer Jones approached him, said he wanted to talk to Watts, and asked him to "step back to the police vehicle." When appellant Wright ignored repeated requests to get out of the car, Officer Gates ordered him out at gunpoint, and took him to the police vehicle also.

Returning to make sure the Oldsmobile was now unoccupied, Officer Gates saw a gun protruding from under the front seat, visible because appellant had not closed the door as he debarked. The officers then "frisked" appellant and Watts by patting down the exterior of their clothing, found no more weapons, but discerned a large bulge inside appellant's shirt. Officer Jones asked what the bulge was; appellant said it was money he had taken by force from a man in California to satisfy a debt; and, since it seemed soft, the officers did not remove it from his person.

When appellant and Watts asked why they were being detained, the officers explained plates on the Oldsmobile were reported stolen. Appellant claimed ownership of the car, saying he had borrowed the plates from a friend he would not name, for a purpose he would not disclose. The officers then arrested appellant and Watts for "fictitious license plates"; they gave the "Miranda warning," and radioed for a tow truck to impound appellant's car.[1] Appellant and Watts continued to talk, each saying Watts was "hitch-hiker" appellant had picked up on the way from California, but stating their meeting place differently. While awaiting the tow truck's arrival, the officers "inventoried" the Oldsmobile's contents; on the back seat, they found a case of assorted whiskey "with a crowbar sitting on top of it"; on the floor behind the driver's seat, they found a bowling bag that bore the name of Elvis Russell, 346 Tungston, Henderson, Nevada. Inside the bowling bag, which was closed but not zipped, Officer Gates discovered a

---

[1]The officers also arrested appellant for carrying a deadly weapon in an automobile and, because he acknowledged using force to "collect" the money discovered on his person, for being a fugitive from justice. We need not determine the legality of these arrests.

large quantity of rolled coins. Gates testified: "When I pushed the front seat forward, I could spread the top apart and look inside the bowling bag." On their inventory sheet, the officers also listed suitcases found in the trunk, but apparently did not look inside. The tow truck came; appellant's car was impounded at a private storage yard with all property, except the gun and the bowling bag containing rolled coins. Those valuables were taken to police headquarters. When appellant was "booked" into the jail, the bulge in his clothes proved to be currency, as he had said.

The officers notified police agencies in Clark County to check bars and bowling alleys for signs of forced entry. Henderson police discovered a burglary at the Henderson Bowling Alley. Appellant was charged with the crime; and evidence at his trial showed the currency on his person, the whiskey, the bowling bag, and the coins it contained, were proceeds of that crime, committed within two hours of appellant's apprehension. The gun had been fired to break the locking mechanism of the bowling alley's safe.

During trial, appellant acknowledged he, his wife, Watts and Watts' girlfriend had been in the Henderson Bowling Alley the day before the crime. However, he said they had "found" the property that linked him to the burglary there. He denied making incriminating oral admissions while in jail, as two Henderson policemen testified he did, after again being advised of his rights. Not surprisingly, the jury found him guilty; the court sentenced him to 10 years in prison; this appeal follows.

1. Appellant contends only the Nevada Highway Patrol has a duty to enforce NRS 482.545, and concludes Las Vegas police may not investigate when an evident misdemeanor involving possession and use of stolen license plates is committed in their presence. Assuming his premise, his conclusion is a non sequitur; for any peace officer may act when a public offense is committed or attempted in his presence. NRS 171.124(1)(a). Indeed, even a private person may arrest in such circumstances. NRS 171.104; NRS 171.126(1).[2]

We might agree the officers could not properly have arrested

[2]Appellant apparently recognizes that with stated exceptions NRS 482.545 declares it unlawful "[t]o operate, or for the owner thereof knowingly to permit the operation of, upon a highway any motor vehicle . . . which is not registered or which does not have attached thereto and displayed thereon the number of plate or plates assigned thereto by the department [of motor vehicles] for the current registration period"; that NRS 482.555 declares violation a misdemeanor; and

appellant under NRS 482.545, if he or his companion had shown the information from central control was incorrect. However, in Terry v. Ohio, 392 U.S. 1 (1968), the United States Supreme Court recognized "a police officer may in appropriate circumstances and in an appropriate manner approach a person for the purpose of investigating possible criminal behavior even though there is no probable cause to make an arrest." Id., at 22; in accord, Robertson v. State, 84 Nev. 559, 445 P.2d 352 (1968). Indeed, before *Terry,* this court upheld the right of a Las Vegas police officer to stop a vehicle that was without a regular plate, saying: "It is recognized that an officer need not and, in fact, should not ignore evidence of a crime which comes to his attention." Harper v.

---

that appellant was not within the exception provided by NRS 482.385 (1) for nonresident owners with proper plates issued by another state.

However, appellant argues that NRS 481.019 creates a Department of Motor Vehicles; NRS 481.027(4) provides its functions concerning highway safety shall not be duplicated; NRS 481.130 creates the Nevada Highway Patrol as a division within the Department of Motor Vehicles; NRS 481.180(3) confers on the Patrol a duty to act for the Department, in enforcement of Chapter 482 of NRS; and appellant concludes "it is only the duty of the Nevada Highway Patrol to enforce the violation of N. R. S. 482.545."

To us, this argument seems flawed. First, if only the Patrol has the "duty," it does not follow other peace officers lack the right. Second, if others act when the Patrol is not present, the Patrol's functions seem augmented, not "duplicated." (Of course, a city's power to vest its municipal court with authority to punish violations of NRS 482.545 would be a different question, about which we express no opinion.) Third, if Las Vegas police had no right to arrest for violations of NRS 482.545, it must be conceded they could investigate when the crime of possessing stolen property was apparently being committed in their presence. NRS 205.275. Cf. United States v. Jones, 452 F.2d 884 (8th Cir. 1971).

Consider also: State v. Pappacostas, 407 P.2d 576 (Utah 1965), holding that where false license plates were used on a car in Nevada, a misdemeanor was committed not only under NRS 482.545 but under NRS 482.275, which requires plates issued for a vehicle to be attached thereto; that such misdemeanors being committed in the presence of a Las Vegas police officer, he had power to arrest; and that a warrantless incident search, revealing evidence of a burglary in Salt Lake City, was valid. Compare: People v. Franklin, 68 Cal.Rptr. 231 (Cal.App. 1968), upon which appellant relies. While holding local police had no right to stop an out-of-state vehicle solely on speculation that its registration had expired, the court said: "The right of a police officer or deputy sheriff . . . to stop a vehicle and investigate where the license exhibited discloses what is in fact a misdemeanor of failure to display a valid license . . . is not in issue in the instant case." Id., at 234, n. 5.

State, 84 Nev. 233, 239, 440 P.2d 893, 897–898 (1968). After *Terry,* our legislature declared: "Any peace officer may detain any person whom such officer encounters under circumstances which reasonably indicate that such person has committed, is committing or is about to commit a crime." NRS 171.123(1). Thus, we think the officers acted properly when they stopped, and approached appellant and Watts.

2. While automobiles are subject to search under certain other rules discussed later, a police officer may summarily seize personal property in the possession of another, wherever it may be, if probable cause exists to believe it is the instrumentality or evidence of a crime, if it has come inadvertently into the officer's lawful "plain view," and if inadequate opportunity to obtain a warrant gives rise to genuinely "exigent circumstances." See: Coolidge v. New Hampshire, 403 U.S. 443, 464–469 (1971).[3] In accord: Chapman v. United States, 365

---

[3]In passing, we note *Coolidge* involved seizure of a car reasonably believed to be evidence, parked in plain view on the defendant's driveway. Since police had ample time to obtain a warrant, and did not come upon the vehicle inadvertently, the Court held these prerequisites for a warrantless seizure were absent.

In Harris v. United States, 390 U.S. 234 (1968), where witnesses identified a "getaway car," and defendant was apprehended while entering it, the Court assumed without discussion that the car's warrantless seizure as evidence was proper in such circumstances, and upheld use of evidence thereafter found inside it in "plain view." *Harris* did not involve an extensive search; its facts are peculiar because the officer testified he discovered the challenged evidence as he was rolling up the car's windows to protect it from rain.

Cooper v. California, 386 U.S. 58 (1967), also had a peculiar factual basis. In *Cooper,* the Court said "lawful custody of an automobile does not of itself dispense with constitutional requirements of searches thereafter made of it," but "the reason for and nature of the custody may constitutionally justify the search" (id. 61), and held that lawful possession of an automobile held "as evidence in a forfeiture proceeding" is such custody (id. at 62).

Other recent cases have approved warrantless exploratory searches of the interior of vehicles previously seized and held as evidence. See: Taylor v. State, 254 So.2d 728 (Miss. 1971); People v. Teale, 450 P.2d 564 (Cal. 1969); People v. Norman, 60 Cal.Rptr. 609 (Cal.App. 1967); People v. Talbot, 414 P.2d 633 (Cal. 1966); People v. Miller, 53 Cal.Rptr. 720 (Cal.App. 1966); Johnson v. State, 209 A.2d 765 (Md.App. 1965). The car-as-evidence concept presents various problems, e.g., are there any limitations on the extent to which a delayed search of such a vehicle may be exploratory? Consider: Harris v. United States, cited above. Does the right to search a vehicle seized as evidence *ever* terminate? Consider: Coolidge v. New Hampshire, cited above,

U.S. 610 (1961); Jones v. United States, 357 U.S. 493 (1958); McDonald v. United States, 335 U.S. 451 (1948); Trupiano v. United States, 334 U.S. 699 (1948);[4] Johnson v. United States, 333 U.S. 10 (1948); Taylor v. United States, 286 U.S. 1 (1932). Here, appellant apparently contests application of the "plain view" doctrine to seizure of his gun, only on the theory that Officer Gates' view was unlawfully obtained by ordering appellant from his car when, appellant says, "no independent ground existed for the officer to question or detain Appellant."

As indicated, Gates' actions were not dependent on cause to arrest. Terry v. Ohio, cited above, recognized that a policeman making a reasonable investigatory stop has the right to protect himself when he "is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous." 392 U.S., at 24. See also: NRS 171.1232(1). In our view, when police see two adult males in a car bearing stolen out-of-state license plates, • they may reasonably fear either passenger or driver is armed

dissent of White, J., indicating belief it does not, while indicating right to conduct a delayed auto search on probable cause under Chambers v. Maroney (hereinafter discussed) does terminate. See: 403 U.S., at 523.

Here, appellant's vehicle arguably could have been seized to prove where the stolen plates were discovered. If examination of the car's interior were not otherwise justified, we would thus have to consider whether the evidentiary nature of appellant's car, in regard to the offense for which he was arrested, justified its seizure and subsequent search.

[4]*Trupiano* may be cited in this regard.

United States v. Rabinowitz, 339 U.S. 56 (1950), held: "To the extent that *Trupiano* . . . requires a search warrant solely upon the basis of the practicability of procuring it rather than upon the reasonableness of the search after a lawful arrest, that case is overruled." 339 U.S., at 66. However, this seemingly left *Trupiano* viable, except for its requirement of "exigent circumstances" even to seize property in plain view at the time of a lawful arrest. In Chapman v. United States, 365 U.S. 610 (1961), Justice Frankfurter, concurring, noted: "While the Court does not explicitly rely on it, underlying the present decision is the approach of *Trupiano*." Id. at 618.

Then, in Chimel v. California, 395 U.S. 752 (1969), the Court said that *Rabinowitz* was "hardly founded on an unimpeachable line of authority," that "the approach taken in cases such as *Go-Bart, Lefkowitz,* and *Trupiano* was essentially disregarded by the *Rabinowitz* Court" (id. at 760), and that *Rabinowitz* was "no longer to be followed" (id. at 768).

Finally *Coolidge,* involving facts parallel to *Trupiano,* removed any doubt of *Trupiano*'s viability; for *Trupiano* was one of the authorities on which the Court in *Coolidge* most heavily relied.

and dangerous.[5] Hence, we think Gates properly ordered appellant from the car; and, particularly after Gates discovered a gun where appellant had been sitting, the officers had a clear right to conduct a limited protective search for weapons on appellant's person. Terry v. Ohio, cited above; Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921 (1972).

Therefore, Gates' discovery of appellant's weapon, and initial discovery of currency on appellant's person, need not be justified on the basis of probable cause to arrest.[6]

3. However, on at least two grounds, appellant contends Gates' subsequent discovery of the whiskey and bowling bag cannot be sustained as an "inventory," related to and occasioned by a proper impound of the vehicle. First, relying particularly on Mozzetti v. Superior Court of Sacramento County, 484 P.2d 84 (Cal. 1971), appellant contends the "inventory" was exploratory in nature, and thus an unjustified

---

[5] Compare: People v. Superior Court of Yolo County, 478 P.2d 449 (Cal. 1970), upon which appellant most heavily relies. In that case, the Supreme Court of California held an officer who had stopped a driver only for exceeding the posted speed limit was unjustified in opening his vehicle's right front door, where a woman passenger was sitting, although she had made what the officer construed as a "furtive gesture" downward when he signaled the driver to stop, and although the driver had walked back to the officer's car rather than waiting for the officer. The decision proceeds on the theory that a mere speeding violation justifies no inference that the driver's vehicle contains contraband, and the nature of the offense precludes any prospect that the vehicle contains "instrumentalities," "fruits" or evidence thereof; that no logical inference of guilt or evasion may be drawn when a driver gets out of his car in response to an officer's order to stop; and that gestures which may well be innocent will not by themselves establish probable cause for an arrest or search, as we recently recognized in Schmitt v. State, 88 Nev. 320, 497 P.2d 891 (1972).

[6] Of course, actual recovery of the currency, when appellant was "booked" into jail, was not an unconstitutional "search." Arabia v. State, 82 Nev. 453, 421 P.2d 952 (1966); Nootenboom v. State, 82 Nev. 329, 418 P.2d 490 (1966); cf. Brett v. United States, 412 F.2d 401 (5th Cir. 1969). That recovery is, in any case, unimportant to our analysis of later events, except that with the currency and the gun both lawfully seized and linked to the burglary, evidence against appellant was quite sufficient to sustain his conviction, and any error in admitting the other physical evidence would seem harmless beyond a reasonable doubt. Appellant's explanation for having the physical evidence was that he had "found" it behind a bar; and if the jury had been disposed to believe that explanation, they should have found it as plausible with all the physical evidence that was before them, as they would considering only the currency and gun. "In this case, we conclude that the 'minds of an average jury' would not have found the State's case significantly less persuasive had the testimony as to [the whiskey and bowling bag] been excluded." Schneble v. Florida, 405 U.S. 427, 31 L.Ed.2d 340, 345 (1972).

and unconstitutional search.[7] Second, appellant contends that since his vehicle was lawfully parked on private property, there was no justification for an impound, hence no justification for an "inventory" to protect its contents during impound.[8]

On at least two grounds, appellant further contends that this "search," as he styles it, may not be justified as incidental

[7]This contention seems insubstantial.

*Mozzetti* involved marijuana in a closed but unlocked suitcase in a car left damaged on the highway by an accident necessitating the owner's hospitalization. While recognizing an impound was appropriate in such circumstances, the California Supreme Court held exploration of the suitcase was an unconstitutional search because it exceeded what was necessary for protection of the vehicle and its contents. However, the court also recognized that, given cause to impound a vehicle, the police may conduct an inventory confined to the impound's legitimate purpose: "We have no doubt that the police, in the course of such valid protective measures, may take note of any personal property in plain sight within the automobile being taken into custody. Any objects clearly visible without probing—including the suitcase in this instance—may be listed in an inventory or other police report." Id. at 89. See also: Williams v. United States, 412 F.2d 729 (5th Cir. 1969); Brett v. United States, 412 F.2d 401 (5th Cir. 1969).

In this case, application of the *Mozzetti* standard would not benefit appellant; the stolen whiskey and bowling bag were in plain view; thus, the most appellant could obtain is suppression of the bag's contents. We are not totally persuaded that an unzipped bowling bag is exactly analogous to the closed suitcase in *Mozzetti;* however, assuming this, we note again that the State's case would not have been "significantly less persuasive had the testimony as to [the bag's contents] been excluded." Schneble v. Florida, cited supra at footnote 6, 405 U.S. 427, 31 L.Ed.2d 340, 345 (1972).

Furthermore, this court has held a thief has no standing to object to a search of stolen property, except when charged with an offense that makes possession of its contents a crime. Harper v. State, 84 Nev. 233, 440 P.2d 893 (1968). Appellant has not suggested we should overrule *Harper,* under which appellant would have no standing to complain of the police looking into the stolen bowling bag.

[8]The question is substantial.

The Las Vegas City Code only authorizes police "to remove a vehicle from a street or highway" when it is an obstruction to traffic or illegally parked, and either unattended or its driver incapacitated to provide for its custody or removal. Las Vegas City Code § 10–21–10: (A) (1960).

In Williams v. United States, 170 A.2d 233 (D.C.App. 1961), defendant legally parked his car in front of the police station after he was arrested for speeding and ordered to follow officers there, and the officers impounded the vehicle while he was in custody. The court held an "inventory" of its contents was an unconstitutional search, saying: "The government has not shown that the automobile was impounded pursuant to this regulation [similar to Las Vegas Code provision] by the mere statement that appellant 'could not leave the

to an arrest under NRS 482.545. First, relying on Chimel v. California, 395 U.S. 752 (1969), appellant contends the "search" took place so far distant from where he was arrested, at the police car, that it was impermissible in scope.[9] Second, relying on People v. Superior Court of Yolo County, cited above, 478 P.2d 449 (Cal. 1970), he contends that where an arrest is for a "routine traffic violation," a search of the vehicle cannot be justified by reference to the arrest

---

automobile parked in front of the police station.' Because of the government's failure to make a showing that the car was unlawfully parked, subject to removal under Section 91, we must rule that the police conducted a forbidden exploratory search and seizure, even though the inspection was not motivated by a desire to discover incriminating evidence." Id. at 234–235.

Similarly, in United States v. Pannell, 256 A.2d 925 (D.C.App. 1969), where defendant's car was parked on a police parking lot while he was inside being booked and making bail for driving with a suspended license, the court held a purported impound of his vehicle was improper and a purported "inventory" therefore an unconstitutional search. While recognizing the government's need "to protect by proper inventory-taking both the property of those arrested and itself against future claims," the court stated: "Nevertheless, the police must first have had a lawful basis for acquiring custody of appellee's auto before they could employ safe-keeping methods such as an inventory of its contents." Id. at 926.

Again, in Pigford v. United States, 273 A.2d 837 (D.C.App. 1971), where defendant's vehicle was parked on the police lot, an "inventory" conducted there within an hour after his arrest on traffic warrants, while he was obtaining collateral for his release, was determined to be an unconstitutional search.

See also: Mayfield v. United States, 276 A.2d 123 (D.C.App. 1971).

Whether the impound of appellant's vehicle could be justified in the instant case, either because the officers could rightfully take protective action on behalf of the true owner who was not yet definitely determined [see Williams v. United States, cited in footnote 7, supra, 412 F.2d 729 (5th Cir. 1969)], or because the car had evidentiary value [see footnote 3, supra], or for some other reason, we need not decide for reasons stated later.

[9]*Chimel* held that to be justified as incidental to a lawful arrest, a search must be limited to the person of the arrestee or the area under his immediate control from which he might gain possession of a weapon or destructible evidence.

However, even so limited a search is not necessarily constitutional merely because conducted contemporaneously with a lawful arrest; the problem is subtler than that. Consider: People v. Superior Court of Yolo County, and Agar v. Superior Court for County of Los Angeles, discussed infra, at n. 11. On the other hand, where other justifications for a more extensive search exist, police are not limited to conducting a limited *Chimel*-type search, although before Chambers v. Maroney, 399 U.S. 42 (1970), was decided, some commentators thought this might be the case. See: *Chimel v. California: A Potential Roadblock to Vehicle Searches,* 17 U.C.L.A.L.Rev. 626, 645 (1970).

because there exists no reason to believe the arrestee's vehicle contains either weapons or evidence.[10]

We need not resolve these contentions; for we believe examination of the vehicle's interior was proper in this case because the police by that time had reasonable cause to believe it contained contraband or evidence in addition to the currency already discovered on appellant's person and the gun found in plain view.[11]

4. In Carroll v. United States, 267 U.S. 132 (1925), the United States Supreme Court long ago rejected the contention that a warrantless search of an automobile can be justified only if incidental to a lawful arrest, and announced a new exception to the general rule that a search is unreasonable unless made pursuant to a search warrant.[12] That exception, prior to the

---

[10]Appellant's gratuitous assumption that operating a vehicle with stolen license plates is a "routine traffic offense," like the speeding violation concerned in People v. Superior Court of Yolo County, seems questionable. See: United States v. Jones, 452 F.2d 884 (8th Cir. 1971).

[11]In People v. Superior Court of Yolo County, the California Supreme Court held that though there be cause to arrest for a routine traffic offense, even a search that does not exceed the scope ordinarily permissible under Chimel v. United States, cited above, cannot be justified as incident thereto. To justify a warrantless search of the car's interior, the court held, "there must be independent probable cause to believe the vehicle does in fact contain contraband." 478 P.2d at 453. Indeed, even a stationhouse "inventory" of the arrestee's clothing has been held unlawful, in traffic cases where he is entitled either to be released on notice to appear, or to be taken before a magistrate to have bail set. Agar v. Superior Court for County of Los Angeles, 98 Cal.Rptr. 148 (Cal.App. 1971).

Appellant also relies on People v. Blodgett, 293 P.2d 57 (Cal. 1956). In that case, Justice Traynor, for the Court, said that while the "driver could have been arrested for double parking, the search of his cab cannot be justified *on that ground,* for it had no relation to the traffic violation and would not have been incidental to an arrest therefor." Id. at 58; emphasis added. However, as we do in the instant case, the California Supreme Court (one Justice dissenting) found independent cause to search the vehicle for contraband. In *Blodgett,* that cause was the officer seeing "defendant withdraw his left hand from behind the seat at the juncture of the seat and back cushion." 293 P.2d at 58. While the sufficiency of this "furtive gesture" as independent cause is debatable, and the California Supreme Court has since said "it will be well to limit *Blodgett* to its facts" (*Yolo,* 478 P.2d at 456, n. 5), both *Yolo* and *Blodgett* recognize a vehicle may be searched for contraband upon independent reasonable cause, even though there is present cause to arrest only for a traffic violation, or no present cause to arrest at all.

[12]For a resume of major cases since decided, see: *Auto Search: The Rocky Road from Carroll to Coolidge,* 17 So.Dak.L.Rev. 98 (1972).

Court's decision in Chambers v. Maroney, 399 U.S. 42 (1970), could be stated generally as follows:

"The two essential conditions to the validity of the reasonable cause auto search under the *Carroll* exception are: 1) The officer must have reasonable cause to believe the auto contains items subject to seizure, and 2) the auto must be 'movable' in the sense that the officer reasonably believes that it may be moved by someone who is free to do so and that it is therefore not 'reasonably practicable' to secure a search warrant." A. Murray and R. Aitken, *Constitutional Limitations of Automobile Searches,* 3 Loyola U.L.Rev. (L.A.) 95, 102 (1970).

Then came Chambers v. Maroney, cited above, in which occupants of a station wagon were arrested on the basis of information provided by witnesses to a robbery; the vehicle was driven to the police station, where a search revealed evidence used at petitioner's trial. As a reigning expert on search and seizure has said:

"Keeping in mind the fact that *Carroll* was based upon the impracticability of obtaining a search warrant in advance of the search, and also the Court's more recent pronouncements in *Chimel* and *Vale* that warrantless searches must be closely tied to necessity, one might well have thought that the Supreme Court would find the search in *Chambers* unlawful. Once the occupants of the automobile had been lawfully arrested, the car was no longer movable, so that even a warrantless search at the time of the arrest was not necessary. As one court put it, 'Exigencies do not exist when the vehicle and the suspect are both in police custody.' . . ." W. LaFave, *Warrantless Searches and the Supreme Court: Further Ventures Into the "Quagmire."* 8 Crim.L.Bull. 9, 18 (1972).

However, in *Chambers* the Court ruled otherwise. On reasoning questioned by Professor LaFave, id. at 18–19, the Court not only concluded that the station wagon could have been searched at the time and place of arrest under the principles of *Carroll,* but found the search at the station lawful. The Court found exigency that would have justified the vehicle's "search on the spot when it was stopped"; it upheld the delayed search at the stationhouse, saying "there is little to choose in terms of practical consequences between an immediate search without a warrant and the car's immobilization until a warrant is obtained." 399 U.S., at 52. Given this standard of continuing "exigency," arresting officers in the instant case could properly search appellant's car, although appellant's arrest rendered it nonmobile, if they had reasonable cause to believe it contained items subject to seizure.

(Compare: *Coolidge,* cited above, in which there was no "exigency" when the initial seizure occurred.)

In the instant case, we think the probable cause element of the *Carroll-Chambers* doctrine was satisfied. When the officers examined the contents of appellant's car, they lawfully knew he had placed stolen license plates on it for some criminal purpose, quite likely connected with robbery or burglary; they knew he had a large wad of money stuffed under his shirt, concerning which he gave a most questionable explanation; they knew he was traveling with a gun at his feet; and they knew he and his companion had given conflicting stories concerning their relationship. Under such circumstances, if the officers indeed "searched" appellant's car, we think they acted on probable cause.[13]

5. Appellant also contends the court should have granted a mistrial when a State witness mentioned appellant had been on probation for another crime. While the witness's statement was improper, as the trial court recognized, the court denied appellant's motion for a mistrial because the evidence against him was overwhelming, and the comment therefore harmless. NRS 178.598; Fairman v. State, 83 Nev. 287, 429 P.2d 63 (1967). After careful review of the record, we agree.

Affirmed.

ZENOFF, C. J., and BATJER and THOMPSON, JJ., concur.

MOWBRAY, J., concurring:

A jury in Clark County found Ferman Wayne Wright guilty

---

[13]In short, we perceive in this case a pattern much like that in White v. United States, 448 F.2d 250 (8th Cir. 1971). See also: Thunder Horse v. State of South Dakota, 456 F.2d 1262 (8th Cir. 1972).

It should be noted that in Heffley v. State, 83 Nev. 100, 423 P.2d 666 (1967), this court upheld an examination of a vehicle's interior on the basis of the "inventory" doctrine; in Heffley v. Hocker, 420 F.2d 881 (9th Cir. 1969), the Ninth Circuit Court of Appeals adjudged us incorrect; in Hocker, Warden v. Heffley, 399 U.S. 521 (1970), the United States Supreme Court vacated the Ninth Circuit's judgment and remanded the case "for further consideration in the light of Chambers v. Maroney"; and in Heffley v. Hocker, 429 F.2d 1321 (1970), the Ninth Circuit denied Heffley relief. This line of authority establishes that, although an officer has not articulated intent to make an exploratory search on probable cause, his actions will be upheld if they meet the tests of Chambers v. Maroney.

of burglarizing a bowling alley in Henderson, Nevada. He has appealed from his judgment of conviction and seeks reversal on the ground that the seizure of the pistol used to blow the lock off a safe located in the bowling alley, a bowling ball bag that contained money taken in the burglary, a crowbar, and a case of whiskey—all items that were found in Wright's car at the time of his arrest—were improperly seized by the arresting officers in violation of Wright's constitutional rights. He also claims that reversible error was committed when one of the State's witnesses made a reference to Wright's probation status.

### 1. *The Facts.*

During the early morning hours of April 17, 1970, two police officers on patrol observed a 1964 Oldsmobile bearing Texas license LWK 373 stopped at a traffic light in Las Vegas. By radio, the officers requested their headquarters to check the plates. They were informed that the plates had been stolen. The officers followed the car into a motel parking lot and stopped it. The driver, one George Watts, left the vehicle and headed for the motel. Appellant Wright remained seated in the front passenger seat of the car. One of the officers ordered him to get out of the car. Wright refused. The officer pulled his revolver and repeated his request. This time, Wright complied. After Wright left the car, the officer noticed a pistol protruding from under the front seat where Wright had been sitting. The officers then frisked both Wright and Watts and found a bulge inside Watts's shirt. Upon the officers' inquiry, Watts said that the bulge was currency he had taken by force from one of his debtors in California. Wright claimed he owned the vehicle and that he had borrowed the stolen license plates from a friend whom he did not care to name. The officers arrested both Wright and Watts for displaying fictitious license plates and gave them the required Miranda warning. The officers then radioed for a tow truck to impound the car, and they proceeded to inventory the vehicle. In addition to the pistol, the officers found, in the back seat of the car, a case of whiskey and a crowbar; and on the rear floor they found the bowling ball bag and money. The officers took Wright and his friend Watts to the police station. Later, after a check with the law enforcement authorities, they learned that the bowling alley had been burglarized.

### 2. *The Search of Wright's Car and the Seizure of the Contraband.*

Wright claims as his principal assignment of error that the

pistol and the other items mentioned above were taken from his car at the time of his arrest during a warrantless search, in derogation of his Fourth Amendment rights.

It appears to me that our review in the instant case, therefore, is limited to the facts presented, and that it is focused and narrowed upon the validity of on-the-spot, warrantless searches of defendants' automobiles that have been properly stopped by the police.

Before venturing further into the "quagmire" of warrantless searches, as so characterized by the majority, I think it is well to keep in mind for whose protection the Fourth Amendment is intended. As Chief Judge Murrah said in Sumrall v. United States, 382 F.2d 651, 654 (10th Cir. 1967):[1]

"Throughout the long, tedious and controversial interpretative history of the Fourth Amendment in which standing to invoke its protections has been almost constantly expanded and enlarged, the keystone has been the protection of the right of privacy. The Fourth Amendment has never been characterized as a rule of evidence, but rather a charter for freedom from the invasion of the right of privacy. . . ."

In quoting Mr. Justice Frankfurter, Judge Murrah wrote (also at 654):

". . . Mr. Justice Frankfurter unequivocally recognized [in Jones v. United States, 362 U.S. 257 (1960)] that the exclusionary rule incident to the prohibitions of the Fourth Amendment is 'a means for making effective the protection of privacy'; that to come within the exclusionary rule one must belong to 'the class for whose sake the constitutional provision is given'; and that to come within the class, he must be the victim of the search in the sense that his right of privacy was invaded. . . ."

Certainly, under the factual posture of this case it cannot be said that Wright's right of privacy was unlawfully invaded. The officers had every right, and a duty, to stop Wright's car, because they had been advised that his license plates were stolen plates.

In Wilson v. Porter, 361 F.2d 412, 415 (9th Cir. 1966),

---

[1] The court, in sustaining a bank robbery conviction, held that police officers had probable cause to arrest the defendant without a warrant for either speeding or driving without a proper license (a license in "a name other than his [Nabors'] own") and that, having made such lawful arrest, a subsequent search of the defendant at the time and place of his arrest was appropriately incidental thereto and that the evidence obtained (a "large amount of money") as a result of the search was not inadmissible on the theory that it was in violation of the Fourth Amendment.

the court, in quoting from Frye v. United States, 315 F.2d 491, 494 (9th Cir. 1963), said:

". . . '[T]he local policeman, in addition to having a duty to enforce the criminal laws of his jurisdiction, is also in a very real sense a guardian of the public peace and he has a duty in the course of his work to be alert for suspicious circumstances, and, provided that he acts within constitutional limits to investigate *whenever such circumstances indicate to him that he should do so.*' (Emphasis added.)"

In Wilson, the police officers on patrol saw the defendant drive by several times in his car at a very slow speed during the predawn hours. The police followed the defendant, turned on their red light, and directed the defendant to pull over to the curb. The officers had no specific knowledge that a crime had been committed, and no traffic law had been violated. One of the officers walked to the right-hand side of the car and requested the passenger to get out and asked for his identification. As the passenger opened the door, the officer standing outside the car shone his flashlight into the car and saw what appeared to be a gun barrel protruding from under the front seat. The officer reached under the seat and pulled out a .22 caliber pistol. The defendant and his companion were then placed under arrest and searched. The officers found a dagger on the defendant's person. The court ruled, at 414:

"We conclude that no right of the appellee was violated when the officers stopped the car and that the subsequent seizure of the evidence upon which he was convicted [possession of a firearm by a felon and possession of a concealed dagger] was justified as pursuant to a lawful arrest. . . ."

At 415, the court held:

"We take it as settled that there is nothing ipso facto unconstitutional in the brief detention of citizens under circumstances not justifying an arrest, for purposes of limited inquiry in the course of routine police investigations. [Citations omitted.] A line between reasonable detention for routine investigation and detention which could be characterized as capricious and arbitrary cannot neatly be drawn. But due regard for the practical necessities of effective law enforcement requires that the validity of brief, informal detention be recognized whenever it appears from the totality of the circumstances that the detaining officers could have had reasonable grounds for their action. A founded suspicion is all that is necessary, some basis from which the court can determine that the detention was not arbitrary or harassing."

And, finally, at 416, the court said:

"The initial stopping of appellee's car having been a lawful detention but not an arrest, the admissibility of the evidence subsequently seized will depend upon the point in time when the arrest occurred. If discovery of the pistol preceded the arrest, that discovery provided probable cause for a subsequent arrest and search."

The case before us is much stronger than Wilson, because in our case the officers knew that the license plates on Wright's car had been stolen. They then had a right and a duty to stop the car. They noticed, as Wright stepped from the car, a pistol protruding from under the front seat. They then placed the defendant and his companion under arrest for having fictitious plates and for possession of a concealed weapon. They proceeded to seize the other contraband in the car, namely, the bowling ball bag and the money therein, the case of whiskey, and the crowbar.

Just recently, the Colorado Supreme Court, in Avalos v. People, 498 P.2d 1141 (1972), upheld the validity of the warrantless search of the purse of a defendant who had been stopped because the right taillight on her car was not functioning. The Colorado court, in its per curiam opinion, said:

". . . Upon being asked to produce her operator's license, she told the policemen that her driver's license had expired. She was then asked to return with the officers to the police car so that they could determine whether her license had expired or had been suspended or revoked. This procedure was wholly proper and did not infringe upon any rights of the defendant. [Citations omitted.]

"While the officers were awaiting a report as to the status of the defendant's driver's license, one of the officers noticed a fresh needle mark on the defendant's right wrist. The needle mark was in plain view. The officer knew the defendant from past encounters and also had information from a reliable informer, as well as from a fellow officer, that the defendant was a narcotics user. . . . Under these circumstances, the officer clearly had probable cause to arrest the defendant. . . .

"Following the defendant's arrest, she was taken immediately to police headquarters, where a search of her purse revealed five hand-rolled marijuana cigarettes. The warrantless search of the defendant's purse and the seizure of the marijuana cigarettes may be upheld either as a search incident to arrest or as an inventory procedure conducted prior to incarceration. . . ."

Any warrantless search that is exploratory or tainted with sham or pretense will not be tolerated. See Mozzetti v. Superior

Court, 94 Cal.Rptr. 412, 484 P.2d 84 (Cal. 1971). There was no such evidence in the case before us. The police officers, in making the arrest and seizing the contraband, acted properly. Wright may not complain that his right of privacy was unlawfully invaded.

3.   *The Reference to Wright's Probationary Status.*

During direct examination of one of the State's witnesses, Officer Edwin R. Lattin of the Henderson Police Department, the following occurred:

"Q   Was that the extent of the conversation or was more said?

"A   Oh, I would say that we probably were there for more than fifteen minutes and the gist there ending—we were discussing his probation and a letter that he had received from his mother regarding his wife and we spoke about it and we paraphrased part of the letter—well, it's nothing relevant to the case probably."

The officer's observation that "it's nothing relevant to the case . . ." was accurate, because a law enforcement officer should know that such testimony may be highly prejudicial to the defendant and be a ground for a mistrial. In this case, the district judge denied Wright's motion for a mistrial because the evidence was overwhelming in favor of conviction. The district judge observed that, had it been a close case, the motion would have been granted.

Under the factual posture of this case, I believe that the district judge ruled properly in denying the motion for a mistrial. Fairman v. State, 83 Nev. 287, 288–290, 429 P.2d 63, 64 (1965).