CHERYL LOUISE BARNATO AND MICHAEL JAY BARNATO, APPELLANTS, v. THE STATE OF NEVADA, RESPONDENT.

No. 6901

October 4, 1972                    501 P.2d 643

■■■■■■■

■

■■■■■■

*Noel E. Manoukian,* of Zephyr Cove, for Appellant.

*Robert List,* Attorney General, of Carson City, and *Howard D. McKibben,* District Attorney, Douglas County, for Respondent.

510.

## OPINION

By the Court, GUNDERSON, J.:

Charged in two counts with possession and cultivation of marijuana, Cheryl and Michael Barnato have appealed from an interlocutory order of the district court denying their motion to suppress evidence.[1] They contend, inter alia, that the district court should have suppressed marijuana plants seized from their home and garden under a search warrant, because that seizure was the fruit of prior seizures accomplished in violation of the Fourth Amendment as interpreted by the United States Supreme Court. We are constrained to agree.

On August 13, 1971, the Animal Control Officer of Douglas County obtained a cat trap from a neighboring county and took it to the residence of the Barnatos' neighbor, Mrs. Giordano, who had complained about a domestic cat that had gone wild. When the Control Officer returned on August 24, Mrs. Giordano informed him the trap had been placed in the Barnatos' garage, apparently because the cat had been seen there. The Control Officer went to the Barnato home with Mrs. Giordano, was introduced to Mrs. Barnato, inspected the trap, and according to his testimony "didn't think it was a good spot to set it, so I said maybe down on the ground some place where the cat could get to it." He testified Mrs. Barnato then suggested the other side of her house as a possible site, which he found satisfactory and utilized. While setting the trap, he saw plants he believed might be marijuana. The following day, on August 25, the Control Officer described the plants to a deputy sheriff, and together they surreptitiously entered the Barnatos' enclosed yard, where they took a leaf from one of the plants. Chemical testing showed it to be marijuana.

The District Attorney's deputy recognized the surreptitious entry of August 25 as unlawful, having been made without the Barnatos' consent; therefore, he suggested that the Control Officer arrange to return "lawfully" and then purloin another leaf, apparently being unaware he was counseling conduct that

[1] The appeal is authorized. NRS 177.015(2).

was also unconstitutional for reasons hereinafter discussed.[2] On August 27, the Control Officer telephoned Mrs. Barnato, obtained her consent to his entering the Barnato yard for the ostensible purpose of checking the cat trap, and while walking behind her in the Barnato yard, surreptitiously took another leaf. Testing indicated this, too, was marijuana.

Later on August 27, affidavits were prepared, omitting reference to the Control Officer's surreptitious entry on August 25, reciting he had taken a leaf while checking the cat trap August 27, and setting forth the results of testing the leaf thus "legally" seized. On the basis of this circumscribed recitation of the facts, a magistrate issued a warrant authorizing a search of the Barnato home and yard, which revealed the evidence appellants have moved to suppress.

1. The federal "exclusionary rule" is applicable to the States. Mapp v. Ohio, 367 U.S. 643 (1961); Ker v. California, 374 U.S. 23 (1963). Hence, if State action here culminated in a search and seizures at the Barnato premises that were "unreasonable" when tested by federal standards, then this court must apply the "exclusionary rule."

2. Under decisions of the United States Supreme Court, the fact that the final search and seizures were made under a warrant does not make them lawful, if that warrant was issued on knowledge the State obtained in violation of appellants' Fourth Amendment rights. Silverthorne Lumber Co. v. United States, 251 U.S. 385 (1920); Wong Sun v. United States, 371 U.S. 471 (1963). Furthermore, even if the Control Officer

---

[2]Officer Redford's testimony establishes that the District Attorney's deputy recognized the surreptitious entry of August 25 was made without the Barnatos' consent, and was therefore unlawful:

"Q. Why didn't you go for a warrant then?

"A. I checked with the Deputy District Attorney, Bill Crowell, and he didn't want to do it right then.

"Q. Did Mr. Crowell tell you that you had to get material like that when you were lawfully on the premises?

"A. Yes.

"Q. Isn't that why you sent Bud Markle [the Control Officer] back to get rightfully on the premises?

"A. That's right."

It is also noteworthy that when appellants' counsel offered the leaf seized on August 25 into evidence at appellant's preliminary hearing, the *District Attorney's deputy said*: "Objected to on the grounds it's the fruit of an illegal search." Then, he "withdrew" this objection, no doubt recognizing its implications.

himself may be considered a private citizen, State action clearly was involved when he surreptitiously seized plant samples from the Barnato garden on August 25 and 27. Raymond v. Superior Court, County of Sacramento, 96 Cal.Rptr. 678 (Cal.App. 1971). Thus, our task is to decide if those seizures were reasonable or unreasonable under announced federal standards.

3. The United States Supreme Court's recent pronouncements in Coolidge v. New Hampshire, 403 U.S. 443 (1971), are controlling in the case before us. In *Coolidge*, which involved seizure of a car reasonably believed to be evidence, parked in plain view on the defendant's driveway, the Court considered the circumstances in which warrantless seizures may be justified as reasonable under the "plain view" doctrine. The High Court held police may seize an item in lawful "plain view," believed on probable cause to be an "instrumentality of the crime" or "mere evidence" (id. at 464), subject to two limitations:

"The first of these is that plain view *alone* is never enough to justify the warrantless seizure of evidence. This is simply a corollary of the familiar principle discussed above, that no amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances.' Incontrovertible testimony of the senses that an incriminating object is on premises belonging to a criminal suspect may establish the fullest possible measure of probable cause. But even where the object is contraband, this Court has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure. *Taylor v. United States,* 286 U.S. 1; *Johnson v. United States,* 333 U.S. 10; *McDonald v. United States,* 335 U.S. 451; *Jones v. United States,* 357 U.S. 493, 497–498; *Chapman v. United States,* 365 U.S. 610; *Trupiano v. United States,* 334 U.S. 699." 403 U.S., at 468; emphasis in original.

"The second limitation is that the discovery of evidence in plain view must be inadvertent. The rationale of the exception to the warrant requirement, as just stated, is that a plain-view seizure will not turn an initially valid (and therefore limited) search into a 'general' one, while the inconvenience of procuring a warrant to cover an inadvertent discovery is great. But where the discovery is anticipated, where the police know in advance the location of the evidence and intend to seize it, the situation is altogether different. The requirement of a warrant to seize imposes no inconvenience whatever, or at least none which is constitutionally cognizable in a legal

system that regards warrantless searches as *'per se* unreasonable' in the absence of 'exigent circumstances.' " 403 U.S. 469–471.

The situation concerned in the instant case is no different in principle from that in *Coolidge,* and is indistinguishable from that in Trupiano v. United States, 334 U.S. 699 (1948), on which the High Court relied most heavily in deciding Coolidge.[3]

---

[3]In *Trupiano,* federal officers infiltrated an agent into a group engaged in manufacturing illegal liquor, aided by the owner of the premises who had originally informed them of the operation. The agent reported a description of the layout and equipment of the illegal distillery; yet, as in the instant case, although they had ample opportunity, the investigators failed to procure any warrant. Instead, they staged a warrantless nighttime raid, driven onto the premises by the owner, who had a right to bring them there. Looking through the doorway of a shed, one of the officers saw one of the criminals standing beside the illegal distillery; he entered, made a legal arrest, and seized the contraband still, mash vats containing fermenting mash, other distillery equipment, and cans containing illicit alcohol—all of which were in plain view, and all unquestionably contraband. The Supreme Court held this evidence was inadmissible at trial, because there was no excuse for the agents' failure to obtain a warrant, authorizing seizure of the property. *Coolidge* makes it clear that this part of the *Trupiano* ruling remains viable.

The Court also held in *Trupiano* that even though the property was in "plain view" at the time of a lawful arrest, its seizure was unjustified in view of the officer's preconceived intention to seize it. While this aspect of *Trupiano* is no longer the law, our own court recognized in Wright v. State, 88 Nev. 460, 499 P.2d 1216 (1972), that *Trupiano* still is viable on the principle for which it was cited in *Coolidge.* In *Wright,* we noted:

"United States v. Rabinowitz, 339 U.S. 56 (1950), held: 'To the extent that *Trupiano* . . . requires a search warrant solely upon the basis of the practicability of procuring it rather than upon the reasonableness of the search after a lawful arrest, that case is overruled.' 339 U.S., at 66. However, this seemingly left *Trupiano* viable, except for its requirement of 'exigent circumstances' even to seize property in plain view at the time of a lawful arrest. In Chapman v. United States, 365 U.S. 610 (1961), Justice Frankfurter, concurring, noted: 'While the Court does not explicitly rely on it, underlying the present decision is the approach of Trupiano.' Id., at 618.

"Then, in Chimel v. California, 395 U.S. 752 (1969), the Court said that *Rabinowitz* was 'hardly founded on an unimpeachable line of authority,' that 'the approach taken in cases such as *Go-Bart, Lefkowitz,* and *Trupiano* was essentially disregarded by the *Rabinowitz* Court' (id. at 760), and that *Rabinowitz* was 'no longer to be followed' (id. at 768).

"Finally *Coolidge,* involving facts parallel to *Trupiano,* removed any doubt of *Trupiano*'s viability; for *Trupiano* was one of the authorities

Thus, under holdings of the United States Supreme Court it is unimportant if one concludes that the Control Officer, through his subterfuge, obtained a lawful "plain view" of the Barnato garden on August 27. His seizures of a plant sample on August 27, and before that on August 25, both constituted "unreasonable" seizures under the rule of *Coolidge,* because the criteria of exigency and inadvertence were absent.[4]

---

on which the Court in *Coolidge* most heavily relied." 88 Nev., at 466, 499 P.2d at 1220.

*Coolidge* did not totally "reinstate" *Trupiano;* for as the Court noted, *Trupiano's* incident search aspect is inconsistent with Chimel v. California, 395 U.S. 752 (1969), and in the special area of auto search, *Trupiano* is arguably inconsistent with Cooper v. California, 386 U.S. 58 (1967), and Chambers v. Maroney, 399 U.S. 42 (1970). However, the Court made it abundantly clear that *Trupiano* is still viable as precedent in the area that concerns us, expressly stating:

"Our discussion of 'plain view' in Part C above corresponds with that given in *Trupiano.* Here, as in *Trupiano,* the determining factors are advance police knowledge of the existence and location of the evidence, police intention to seize it, and the ample opportunity for obtaining a warrant." 403 U.S., at 482.

[4]Some mention should be made of the two state court decisions on which Justice Mowbray's dissent relies.

In our view, the California Supreme Court's four-to-three split decision in the 1969 case of People v. Bradley, 460 P.2d 129 (Cal. 1969), has no significance as precedent in the instant case. First of all, *Bradley* preceded *Coolidge,* in which the United States Supreme Court clearly formulated the test that must control our decision. Any lesser authority like *Bradley* that applies some different formula, to reach a result contrary to *Coolidge,* obviously must be disregarded. Moreover, *Bradley* involved facts more like those in Merica v. State, 87 Nev. 457, 488 P.2d 1161 (1971), than those in the case before us. In *Bradley,* like the situation in *Merica,* contraband was found in an area the tenant apparently shared in common with his landlord, who lived on the premises too, and was within 20 feet of a door to which tradesmen regularly came. In the instant case, we are concerned with plants in the enclosed side yard of a single-family dwelling, only two to five feet from the house. As one officer testified, the house is "secluded," and when one approaches its door, "there was nothing in your plain or clear view to indicate that there was anything of a marijuana nature or substance on the property." Thus, even before *Coolidge* was decided, application of the *Bradley* approach to vindicate a seizure like that in the instant case would have been questionable in light of the Ninth Circuit Court of Appeals' holding in Wattenburg v. United States, 388 F.2d 853 (9th Cir. 1968).

Blincoe v. People, 494 P.2d 1285 (Colo. 1972), is not authority contrary to *Coolidge;* nor could authority contrary to *Coolidge* be credited in any event. In *Blincoe,* officers inadvertently discovered contraband while legitimately on the defendant's premises, and want of a prior opportunity to obtain a warrant gave rise to "exigent circumstances." Thus, the Colorado Supreme Court decided the seizure met the test of *Coolidge,* saying: "Suppression was not required in this case primarily

4. Of course, Mrs. Barnato's consent to entry of her garden on August 27 was not tantamount to a waiver of the Barnatos' Fourth Amendment rights. In Gouled v. United States, 255 U.S. 298 (1921), a business acquaintance of the defendant, acting for the government, gained access to the defendant's office under the guise of making a friendly call. While there, he surreptitiously seized papers having "evidential value only." The High Court suppressed these papers as unlawfully seized, and also suppressed other evidence discovered as a result thereof, saying it was "impossible to contend" that because entry was "obtained by stealth instead of by force or coercion" the seizure was reasonable. Id., at 305; cf. Lewis v. United States, 385 U.S. 206 (1966), citing *Gouled* with approval.

The order appealed from is reversed.

ZENOFF, C. J., and BATJER and THOMPSON, JJ., concur.

MOWBRAY, J., dissenting:

Respectfully, I dissent.

The Barnatos, who were charged in the district court with the unlawful possession of marijuana and the cultivation of marijuana, have appealed from an interlocutory order of the district court denying their motion to suppress as evidence the marijuana seized in the Barnatos' garden and home. They assert that the search and the seizure of the marijuana, pursuant to a search warrant issued by the magistrate, violated their Fourth Amendment rights. The district judge rejected their claim and denied their motion to suppress the marijuana as evidence. I agree with the ruling of the district judge, and I would deny the Barnatos' appeal.

On August 24, 1971, accompanied by a neighbor of the Barnatos' and with the permission of Mrs. Barnato, the Animal Control Officer of Douglas County set a trap underneath the Barnatos' house to catch a domestic cat that had become wild. Upon leaving, the Officer noticed several plants growing in the garden and asked Mrs. Barnato what they were. She replied that she didn't know. The Officer remarked that they looked like marijuana plants and then left the premises.

---

because the record failed to support the defendant's contention that the officers were engaged in a search when they observed the adding machine and cash register in plain view. *See* Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)." Id. at 1286. Obviously, quite the opposite is true of the two surreptitious seizures that preceded the issuance of a warrant in the case before us.

The following day the Animal Control Officer described the plants to a deputy sheriff. They decided to go to the Barnato home and inspect the plants. Without informing the Barnatos of their intention, they proceeded onto the Barnato property and took a leaf from one of the plants. That leaf was tested by a chemist and found to be a leaf from a marijuana plant. The deputy district attorney was advised of this fact. He suggested that another leaf be obtained on an occasion when the officers had the consent of the Barnatos to be on their property. On August 27, the Animal Control Officer telephoned Mrs. Barnato and asked her permission for him to come to her home for the ostensible purpose of checking the trap. Permission was given. Upon arriving at the home, the Officer was met by Mrs. Barnato, who accompanied him to the place where the trap had been set. The Officer retrieved the trap and was walking behind Mrs. Barnato when he stopped and took a leaf from another plant. The Officer reset the trap in the garage attic and then departed. This leaf was subjected to test and found to be marijuana. Affidavits were then prepared to support a search warrant. A warrant was issued authorizing a search of the Barnatos' home and surrounding property. Search and arrest warrants were served on Mrs. Barnato, and she was advised of her rights. Several marijuana plants were found both inside the home and in the garden where originally observed by the Animal Control Officer. At preliminary hearing, all evidence seized pursuant to the warrant was received in evidence and is, of course, the evidence to which the district court motion to suppress was directed.

I would uphold the legality of the search in this case because, under the facts presented, in my opinion the search was reasonable. The Officer was on the Barnato property with the owners' permission. There was no unlawful invasion of the Barnatos' privacy. The marijuana in the garden was in plain view. The officers did all that could be expected of them. After they learned that the suspected plants were marijuana, they obtained a search warrant, upon proper affidavit, from the magistrate. I simply cannot fault them for their actions in this case. See People v. Bradley, 81 Cal.Rptr. 457, 460 P.2d 129 (Cal. 1969), where the California Supreme Court held that an officer's discovery and seizure, without a warrant, of marijuana plants growing under a tree adjacent to the defendant's residence, pursuant to a tip from an unreliable informant, did not violate any constitutional prohibition against unreasonable searches and seizures, where the plants were in plain sight of anyone within a foot of the tree located approximately 20 feet

from the defendant's door. The California court held, 81 Cal.Rptr. at 459, 460 P.2d at 131:

". . . [W]e believe that an appropriate test is whether the person has exhibited a reasonable expectation of privacy, and, if so, whether that expectation has been violated by unreasonable governmental intrusion. [Citation omitted.]

"Measured by that test we are satisfied that the officer's discovery and seizure of the marijuana plants in the yard adjacent to defendant's residence did not violate the constitutional prohibitions against unreasonable searches and seizures. From the recited evidence it may be inferred that the marijuana plants were partially but not totally covered by foliage. It does not appear that the plants were covered by nontransparent material, and it may be inferred that at least part of the plants were in plain sight of anyone within a foot of the tree. Although they were in a rear yard that was fenced to an undisclosed extent, they were located a scant 20 feet from defendant's door to which presumably delivery men and others came, and the front house, as well as defendant's house, apparently had access to the yard. Under the circumstances it does not appear that defendant exhibited a subjective expectation of privacy as to the plants. Furthermore, any such expectation would have been unreasonable. [Citations omitted.]"

See also the recent case of Blincoe v. People, 494 P.2d 1285 (Colo. 1972). In Blincoe, the Colorado Supreme Court ruled that officers who were on the premises with consent were entitled to seize stolen items in plain view. As in this case, a suppression hearing was held. At the conclusion of the hearing, the district court denied the defendant's motion to suppress evidence that had been seized by the police officers. In denying the motion, the district court found that the articles were in plain view and that a warrant was not required. The Colorado Supreme Court upheld the ruling of the lower court and said, 494 P.2d at 1286:

"Suppression was not required in this case primarily because the record failed to support the defendant's contention that the officers were engaged in a search when they observed the adding machine and cash register in plain view. *See* Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) [the principal case cited by our majority in support of their ruling today]. To the contrary, the officers' presence on the premises was for the avowed purpose of making inquiry about the stolen articles. Only after the officers failed to find anyone at home *and* were informed that one of the

persons who resided in the house was then present in the back-yard, did the officers enter the curtilage of the premises. The curtilage concept came from the court's desire to protect not only a citizen's house, but his grounds as well, from intrusions and an invasion of privacy. The police conduct was reasonable under the circumstances before us, and no claim can be made that a right of privacy was infringed. In this limited factual situation, the officers' presence on the property for the legitimate purpose of making inquiry about stolen goods was justified. [Citations omitted.] Being legitimately on the property, the officers were entitled to seize any stolen items which were in plain view. [Citations omitted.]" (Emphasis in original.) See also People v. McGahey, 500 P.2d 977 (Colo. 1972).[1]

In the instant case, the seizure of marijuana leaves on August 25 and 27 did not violate the Fourth Amendment. The marijuana plants were in plain view. No effort was made to conceal them from the vision of anyone who happened to be in the yard. There is nothing to suggest that the Barnatos exhibited a subjective expectation of privacy as to the plants. Indeed, to an extent, Mrs. Barnato was forewarned, since on the first visit, which occurred with her permission, the Animal Control Officer inquired about the plants, and she did nothing thereafter to conceal or destroy them. She must have known of his interest and the probability that on any later visit by him, or anyone else, a similar inquiry might be made, and more definitive action taken. On August 27, the Animal Control Officer came to her home, once more, with permission, for the ostensible purpose of checking the trap, and seized a leaf from another marijuana plant. It cannot reasonably be asserted that, in these circumstances, Mrs. Barnato exhibited a subjective expectation of privacy as to the marijuana plants.

The guaranty against unreasonable searches and seizures is not a haven behind which one may seek refuge for violation of law committed on his property, the evidence of which he makes no effort to conceal. What a person knowingly exposes to the public, even in his own home or office, is not subject to Fourth Amendment protection. Since the seizures of marijuana leaves on August 25 and 27 were constitutionally permissible, the

[1]Mr. Justice Gunderson, in writing for the majority, has in his footnote 4, elected to criticize the authorities that I have cited in support of my position. I prefer not to answer those comments, for the authorities I have cited have not been overruled, and they speak for themselves. Further, the full texts of the cases cited in both the majority and this minority opinion are available for reference to both bench and bar.

subsequent search and seizures of the marijuana plants pursuant to warrant could not have been tainted thereby. Therefore, the evidence secured pursuant to warrant, in my opinion, is not barred. I would uphold the validity of the search and seizures, and I would sustain the district judge's ruling denying the defendants' motion to suppress.